MARTHA FULLERTON v. J. W. P. DOYLE.

Where a vendee, by executory contract, withholds the payment of purchase money, on the ground of defect of title or incapacity of the vendor to convey, and the vendor brings suit to cancel the contract on the ground that the vendee has forfeited it by refusing to pay the purchase money, the vendee, in case he is desirous to have a specific performance, should proffer performance and pray the Court, in the event it appear that the plaintiff can make title in accordance with the contract, to make such decree ; or if he is willing to accept such title as the plaintiff can make, with or without warranty, according to the terms of the contract, he should frame his prayer accordingly.

Where the husband abandoned the wife, who had no separate property, leaving no means for the support of herself and three children by the marriage, except a tract of land containing about two hundred acres, and worth about one dollar per acre, which was community property, it was held that the wife had authority to sell the land; and it was further held that the period of abandonment is not material except in evidence, to show that the absence is not temporary in its nature.

It would seem that where the husband abandons the wife, the power of managing and selling the common property passes immediately from the former to the latter, saving the rights of innocent purchasers from the husband.

Where a wife is invested with the power to sell the common property, by reason of the fact that she has been abandoned by her husband, her contract of sale is subject to the laws governing the contracts of unmarried women and not to those governing the contracts of married women, at least as to the form of authentication.

Where the vendor, by executory contract, with stipulation to convey as soon as the balance of the purchase money is paid, offers to convey if the vendee will pay the balance of the purchase money, and the vendee refuses on the ground that the vendor cannot make a good title, and that he, the vendee, has since purchased a better title, the vendor may elect to treat the contract as abandoned ; and in a suit by him to cancel the contract, the vendee cannot object that the vendor did not tender him a conveyance of the land already executed.   But quere, if the vendor show that he was acting in good faith, and offer to pay the balance of the purchase money, and pray a specific performance in the event it should appear to the Court that the plaintiff has the title to the land and capacity to convey.

Where the balance of the purchase money, in an executory contract for the sale of land, was to be paid when the vendor should make or cause to be made a good and sufficient title to the land, and no time was specified for the payment of the money or the making of the title, the Court said that time was not made the essence of the contract by the stipulations of the parties, but that it became so from surrounding circumstances, (for which see the Opinion.)

Appeal from Navarro.   Tried below before the Hon. Henry J. Jewett.

This suit was commenced September 6th, 1852, by the appellant against her husband, for a divorce on the ground of desertion. In the petition, she described the land in controversy, alleged that it was common property, and prayed that one half of it should be vested in herself and the other half in her three minor children who were made defendants.   An amendment to the petition, filed February 12th, 1853, but which had been sworn to by the plaintiff October 27th, 1852, alleged that since the commencement of the suit, John W. P. Doyle, the appellee, " who claims to be the owner of said land, by a right and title unknown to your petitioner, has entered upon said land, and is now destroying the timber," &c. ; prayer that Doyle be cited, and that his pretended claim be declared null, &c.

From this out, the transcript shows nothing further as to the issue of divorce.

July 1st, 1853, the defendant Doyle filed an answer, in which he alleged that the three hundred acres of land mentioned in the petition, were on the 19th of March, 1852, conveyed to him by A. Barry, a resident citizen of said county, for the sum of three hundred dollars, paid by this defendant to said Barry ; that said Barry, at and before the time of the sale, falsely and fraudulently represented the fact to be, and so stated to this defendant, that the title to said tract was free from doubt, and was held by him by a good and perfect title ; that defendant had made valuable improvements, describing them ; prayer that Barry be cited to appear and defend the suit, and if it should be decided that the plaintiff has the better right, then that this defendant have judgment against Barry for the purchase money paid by this defendant, and interest thereon ; for the value of defendant's improvements, costs, and for general relief.

December 2nd, 1853, answer by Barry, that defendant Doyle purchased with a full knowledge of the title ; that the defendant had not warranted the title, nor made any false or fraudulent representations respecting it.

June 9th, 1854, plaintiff amended, and alleged that said Doyle contracted with plaintiff for her interest in said land, and agreed to pay to plaintiff the money set forth in the contract, and after the making of the same, failed and neglected, and still fails and neglects to pay the purchase money or any part thereof ; but fraudulently made representations to her to force the possession of said land, and so soon as he entered on said land, which was during the pendency of this suit, set up adverse title to the same, and pretended to claim title under another.

June 9th, 1854, Doyle amended his answer, alleging that the plaintiff did, on the 25th day of January, 1852, execute and deliver to said Doyle, her agreement, hereinafter mentioned, for the consideration of two hundred and eight dollars,—fifty-eight dollars of which were paid in cash to the plaintiff, and

the balance agreed to be paid when the said plaintiff should make or cause to be made to defendant a good and sufficient title to the land and premises, claimed by her in her aforesaid petition, which said agreement is here filed as part of this answer, and marked exhibit " A." Wherefore defendant says he has better right and title to said land and premises than plaintiff, and that the said plaintiff is barred and estopped from prosecuting this suit as to this defendant.

Exhibit A, referred to in said answer was as follows : Articles of agreement made and entered into this day, between Martha Fullerton, of the one part, and J. W. P. Doyle of the other part, witnesseth : whereas I, the aforesaid Martha Fullerton of the first part, have sold all my title, claim and interest to a tract of land, known as the Fullerton place, on Post-oak creek, a portion of the headright of Noah T. Byars ; for which the said Doyle, of the second part, has agreed to give me, the said Martha Fullerton, two hundred and eight dollars, as follows, fifty-eight dollars in hand, and one hundred and fifty, when the aforesaid Martha Fullerton makes, or causes to be made, a good and sufficient title to the above described tract or parcel of land, (signed by Mrs. Fullerton, and attested by one subscribing witness.)

Same day defendant filed another amendment, in which he alleged that he entered into possession of the lands and premises, mentioned in the petition, in the month of January, 1851, and continued in the quiet, peaceable possession of the same with the knowledge and consent of the plaintiff, and, on the 25th day of January, 1852, the said plaintiff executed to this defendant the bond for title, mentioned as exhibit " A," in this defendant's former answer.

This defendant further says, that, by reason of the execution of said bond for title, and the statements and representations of the plaintiff, made to this defendant at and before the execution of the bond in regard to said lands, and her right to convey the same, he has made permanent and valuable im-

Fullerton v. Doyle.

provements, of a beneficial character, upon the lands sued for ; said improvements and their value are set out in defendant's answer, filed July 1st, 1853, (and so much of said answer is here referred to as part of this,) which, he prays may be allowed him against said plaintiff.

This defendant states that said plaintiff represented, that she had a good and perfect title to said lands, and that she was authorized to sell and convey to this defendant ; that his said purchase and improvements were made upon the faith of the plaintiff's satements and of her said bond for title.

Said defendant also files as part hereof, a bond for title, from W. W. Fullerton, the husband of· the plaintiff, for fifty-five acres of land, being part of that sued for ; said bond is dated 27th September, 1848.

And, having fully answerred, defendant prays to be hence dismissed with his reasonable costs.

Same day plaintiff amended and says she specially denies that any contract was made and signed by the plaintiff to J. W. P. Doyle, and if any contract was so made as set up in his amended answer at this Term of the Court, said defendant Doyle refused, neglected, and failed to comply with his contract, in paying the purchase money unto the plaintiff, that was due and owing on said land, and forcibly took possession of ·said land under pretended title, held and claimed by one A. Barry, which was conveyed by said Barry to defendant Doyle; and petitioner avers that said Doyle refused to comply with his contract with plaintiff, and, at the time of filing of said suit against said Doyle, the plaintiff tendered unto defendant Doyle the sum of fifty-eight dollars, the amount paid by said Doyle to this plaintiff, principal and interest, and, on the said defendant Doyle refusing to accept said sum of money, deposited said tender· in the Clerk's office, with the Clerk of this Court, and that the said sum of fifty-eight dollars is here in Court, subject to the order and control of said Doyle, and here produces the same.

And petitioner avers that said Doyle holds possession of said land adversely to plaintiff, and has continued so to do, and has failed and still fails and neglects to pay the purchase money or any part thereof to petitioner.

Wherefore petitioner prays that said contract may be cancelled and rescinded and that she recover her lands and damages as prayed for in this petition against said Doyle, filed on the 16th day of February, 1853, and as in duty bound will ever pray, &c.

Then followed an entry at the Spring Term, 1854, without date, to the effect that the plaintiff's exceptions to Doyle's answer were sustained, and both parties took leave to answer. This order was probably made on the 9th of June, before the last amendments filed by the plaintiff, and defendant Doyle on that day. It did not appear that any amendment was filed by either party after June 9th, 1854.

Fall Term, 1854, trial ; verdict : " We the jury, find for the defendant Doyle, he paying purchase money and interest and costs of suit." Judgment accordingly. Motion for new trial overruled and plaintiff appealed.

The facts in evidence are fully stated in the Opinion, except that execution against Dean who had Fullerton's bond, dated in 1848, for fifty-five acres, had been levied on Dean's interest in the whole tract in 1851, under which levy Barry purchased at the Sheriff's sale.

The Judge instructed the jury, without request, as follows :

That there being no proof of the death of the defendant Wm. Fullerton, and he not having been absent more than two years before this suit was brought, or, at the farthest, three or four years, it was (not) competent for the plaintiff, Martha Fullerton, to enter into a contract with J. W. P. Doyle for the sale of the land in controversy.

The plaintiff, Martha Fullerton, could not demand from Doyle the payment of the balance of the purchase money, according to her contract with him, without first tendering to

make a good title to him to the land ; that plaintiff could not make a title at the time of commencing the suit against Fulerton ; and that the averments in the petition of plaintiff must be construed as an admission that she had not at that time a good and sufficient title to the land.

That the plaintiff is estopped and prevented from charging Doyle as a trespasser on the land by her agreement with him, unless he had grossly and wantonly disregarded the terms of it, and committed some acts of waste, or did intentionally some acts to injure the land permanently.

That plaintiff could not recover any damages from Doyle, for his failing to pay the purchase money, &c., unless Doyle (after the plaintiff was ready to comply on her part) had failed and refused to pay the balance due her, on the agreement for the sale of the land.

At the request of the plaintiff, the Judge instructed the jury that if they believed from the evidence, that the defendant Doyle did not comply with his contract in paying the purchase money to the plaintiff, and still refuses to pay the same, and has not paid or offered to pay the same by a legal tender, they may find for the plaintiff.

The following instructions. asked by the plaintiff, were refused ·

That if the jury believe from the evidence, that said Doyle entered upon the lands under Martha Fullerton, by a contract, and, after taking the possession of said land; purchased a title adverse to her and claimed under said title, and refused to pay the purchase money to Martha Fullerton, and that, if they believe from the evidence, that after the refusal of said Doyle to comply with the contract, the party plaintiff offered to place the defendant in the same situation he was before the making of the contract, they must find for the plaintiff.

That if the jury believe from the evidence, that the defendant, at any time after the making of the contract with plaintiff, refused to comply with the contract and pay the purchase

money due for the land, it was a forfeiture of the same on the part of Doyle.

That if they believe from the evidence, that said plaintiff was a married woman she could not convey the same, and that any contract made by her for the homestead is void.

That a married woman, undivorced, during the life time of her husband, cannot sell the homestead or common property of the marital copartnership, without joining the husband.

*F. L. Barziza,* for appellant, cited Hays v. Wright, 9 Tex. R. 130 ; Browning v. Estes, 3 Id. 463 ; Edwards v. Adkinson, 14 Id. 373 ; Mason v. Chambers, 3 Mon. 318 ; Madison v. Chinn, 3 J. J. Marsh. 230 ; Frazier & Broadman, 2 Litt. 249.

HEMPHILL, C J.　To recapitulate the pleadings, or comment upon the anomalies and contradictory phases assumed by the parties, would be as irksome as unprofitable.

Without this waste of time and effort, we will proceed to state the most material facts, as adduced in evidence, and adjudge the law of the case as it arises on those facts.

These show that that the plaintiff was, in 1850, abandoned by her husband, who was last heard of in California ; that she received no support from him for herself and three children, and had no separate property ; and there was no property of any kind belonging to the husband in Texas, or to the plaintiff, his wife, or their children, except the land in suit, which was community property, and had been the homestead of the family. The husband removed the family from their homestead in 1850, without having provided another ; at least there is no proof to that effect. The presumption is strong, it may be said, conclusive to the contrary ; it being in proof that she was destitute of the means of subsistence, and dependent on the charities of strangers for a support. Under these circumstances, the plaintiff contracted for the sale of the land to the

defendant for two hundred and eight dollars, (less than one dollar per acre ;) fifty-eight dollars of which were paid down, and the remainder .to be paid when the plaintiff made or caused to be made a good and sufficient title. This contract was dated on the 25th January, 1852. On the 19th of the succeeding March, the defendant purchased the said land from one A. Barry, and in the first answer of the defendant, he sets up this purchase ; or rather, his averments are to the effect, that he made the purchase induced by the representations of Barry that he had a good and perfect title.

A witness, Michael Welch, testified that he was present at a meeting between Doyle and plaintiff ; that the plaintiff pro posed to convey the land to Doyle, on his paying the purchase money ; but Doyle refused, as Barry, from whom he obtained a deed, would not pay any part of the money ; that he, Doyle, had Barry's title to the land. The witness reiterates two or three times, in substance, that Doyle refused to pay the purchase money and claimed title under Barry's deed ; that the fifty-eight dollars paid by Doyle, was tendered to him, which he, finally, after some change of opinion, refused to receive. All this transpired before the filing of the petition. Witness had seen a letter from Doyle to plaintiff, offering to pay for the land, but this was prior to the purchase from Barry ; that the land was worth three dollars per acre at the commencement of suit. Another witness states improved lands to be worth five, and wild lands three dollars per acre. The witness Welch also stated that the plaintiff did not offer or tender to Doyle a deed for the land at the time Welsh called on Doyle to pay the balance of the purchase money. The fifty-eight dollars tendered to, and refused by Doyle, were, on the filing of the petition, deposited with the Court, and were tendered in Court to the defendant.

The facts as to the extent of the improvements on the place prior to the purchase by Doyle, or the additions subsequently made by him, need not be stated. The title of Doyle, derived

originally from the purchase of plaintiff, to fifty-five acres, is admitted. The controversy is in relation to the remaining two hundred and forty-five acres.

The question is, should the contract be enforced for defend ant, or be rescinded as prayed for by the plaintiff?

It should be observed that the defendant does not pray a specific performance. He sets up the contract in his amended answer, and insists that thereby he has a better right and title to the premises than the plaintiff, and that she is estopped from prosecuting this suit ; but he does not allege performance on his part, or proffer performance on compliance by the plaintiff with her stipulations. But, admitting that specific execution might be decreed notwithstanding the want of a prayer to that effect ; we will examine whether, upon the facts, he is entitled to such relief ; or the plaintiff be entitled, as she has prayed, to a rescission.

That the plaintiff, though a married woman, could, on abandonment by the husband, make a valid disposition of the community property, can scarcely be regarded as an open question in this Court. In Wright v. Hays, (10 Tex. R. 130,) it was in substance decided, that where a husband abandoned the administration of the common property, deserting his wife and country, contributing in no mode to the support of the family, reducing the wife to the necessity of providing for them, alone, and of taking the care and charge of the common property, such abandonment vested all the rights of disposition in the wife, which could have been exerted by the husband, had he remained in the discharge of his duties and power as husband. The marital prerogatives of the husband are exalted, but when he descends from the throne of his exaltation, and abjures and virtually renounces his authority, and by abandonment, disables himself to discharge his duties as husband, in providing for his wife and family, it would be the extreme of cruelty to suffer the wife's disabilities from coverture, to continue, sacrificing her to the empty shade of

authority, and depriving her of the miserable privilege of providing for the wants of herself and children, out of property specially designated by law for the benefit of the matrimony, and in which she has an equal interest with her husband. In the case cited, of Wright v. Hays, the abandonment continued for years. But this circumstance is not material, except in evidence, to show that the absence is not temporary in its nature, but a complete desertion. The rights and powers of the wife arise from the fact of abandonment, and not the length of its continuance. Most if not all the exigencies which impart authority to the wife, concur in this case ; abandonment by the husband of the wife and State ; refusal or neglect to discharge his marital duties, in providing for the wants of the family, and in the preservation of the common property ; forcing upon the wife the necessity of supporting herself and children, by her unaided exertions, and controlling and managing the property and affairs pertaining to the marriage.

This contract made by the plaintiff thus abandoned is valid ; at least it is not impaired from the want of joinder by the husband. The fact that the land was the homestead, does not affect the contract. The assent of the partner who abandons the home and family, and the duties and powers of the marriage relation, is not requisite to the sale of the homestead.

The contract being valid, the question is whether the defendant is entitled to specific performance, as found by the jury and decreed by the Court.

That the defendant essentially failed and refused to comply with the stipulations of the agreement is most manifest from the evidence. If the witness Welch be entitled to credit, and nothing appears to the contrary, the defendant on a proffer by the plaintiff to convey, and a request that he should pay the purchase money, refused such payment. It may be said that she had not tendered a conveyance, as she was bound to do by her stipulations. But she did what was equivalent. She proposed to convey on his paying the purchase money. That is,

the acts should be simultaneous. But he refused, not on the ground that she had not made and actually tendered a conveyance, but because he had purchased from Barry and relied on his deed. The refusal on such ground discharged her from the obligation of drawing and tendering a conveyance. Why should this be done, when the contract was repudiated by the defendant, relying as he did on an adverse title, and refusing to pay although a conveyance was proffered if he would make such payment. This, under the circumstances, was such abandonment of the contract as discharged the plaintiff from her obligations. The circumstances under which this contract was made were peculiar. The plaintiff, abandoned by her husband, left destitute, without the means of support for herself and family, dependent on the charities of others, sold, at a low rate, this land, (her only property) and which was rapidly appreciating in value. If in any case it is the duty of a vendee to be eager and prompt in the discharge of his stipulations, it certainly was in this. But instead of such promptitude, the defendant, in less than two months, purchases up and relies on an adverse title, and refuses further compliance. He surely cannot, with any grace, invoke the aid of a Court to enforce a contract thus repudiated by him, and which he did not even subsequently offer to perform. Had he subsequently *recenti facto* proffered compliance, and prayed for specific execution, it is exceedingly doubtful whether his prayer should have been treated by Courts of Equity with indulgence. This is not the character of cases in which indulgence should be extended. It is one in which the vendee should be held to a strict compliance with his stipulations. Time, it is true, is not made the essence of the contract by the stipulations of the parties, but it became so from surrounding circumstances. At the least the defendant should have shown a reasonable diligence ; but instead of diligence, of a readiness to pay the money, his acts are equivalent to an absolute refusal, and as such they amount to an abandonment of the contract, and the judgment should

have been for the plaintiff, and that she recover possession of the land.

The question in relation to the rents, improvements, &c., and as to whether, under the circumstances, the plaintiff should pay back the fifty-eight dollars, need not be here discussed. The rents and profits derived from the use will doubtless far exceed the fifty-eight dollars. For authorities in support of the principle of this opinion see Edwards v. Adkinson, 14 Tex. R. 373 ; Roberts v. Berry, 17 Eng. Law and Equity, 400 : 2 Story, Eq. Ju. §776 ; 2 Scholer v. Lefroy, 684 ; 3 Monroe, 318 ; 3 J. J. Marshall, 230.

These views dispose of the important question in the cause, and it is ordered, adjudged and decreed that the judgment be reversed and the cause remanded for further proceedings in conformity with this opinion.

Reversed and remanded.