EDWARD B. WALKER ET UX. v. CHESLEY STRINGFELLOW.

During the marriage the husband has the sole management of the separate property of his wife. (Paschal's Dig., Art. 4641.) But if the husband separate from the wife, and leave her to the management of her property, and he does not contribute to her support and maintenance, such a condition of affairs invests her with authority to sell her property without his concurrence. (Paschal's Dig., p. 778, Note 1050.)

A *feme covert* is no more allowed to practice fraud in the sale of her property than a single woman.

The husband and wife resided in Texas, where she owned a slave; she returned to Georgia, where the husband left her, and they remained separate for three years, during which time she sold her slave. Having afterwards resumed her marital relations with her husband, this suit was brought to recover the slave and her increase: *Held*, that they could not recover.

APPEAL from Brazoria.    The case was tried before Hon. GEORGE W. SMITH, one of the district judges.

Judgment was rendered on the 10th day of October, 1859. The facts are sufficiently stated in the opinion of the court. It may not be improper to remark, however, that before the decision of the Supreme Court the slaves had become free, and there remained nothing but a question of costs.

No brief for the appellant has been furnished to the *Reporter*.

*Munson & Lathrop*, for the appellee.

LINDSAY, J.—The appellants are man and wife, married in 1840, in the county of Brazoria, State of Texas. At the time of the marriage, the wife was the owner of a negro girl in her own separate right. Before the institution of this suit the girl gave birth to several children. In the year 1841, the year after their marriage, the appellant, Caroline E. Walker, went to the State of Georgia, where her mother and other relations lived, leaving the negro girl in Texas. Some months afterwards the husband joined the wife in the State of Georgia. A short time after this the husband returned to Texas, leaving his wife in Georgia, and remained absent from his family about three years. During the separation, one Tod Robinson, at the request of the brother of the wife, took charge of the girl, as agent, and hired her out. He took charge of her in 1842, and continued his control over her until 1844, when an agent of the wife appeared in Texas, with a power of attorney from her, authorizing him to sell the girl. The agent proved that, at the time of the execution of the power of attorney to him, the wife represented that she and her husband had separated, and she exhibited to him a letter from her husband, in which he said he would have nothing more to do with her or her property; that he, with this

power of attorney, came on to Texas, and finding the girl
contracted to be sold by an agent of the wife, created by
letter, he ratified the contract, received the purchase-money,
and on his return to Georgia paid it over to the wife, his
principal. The defendant in this suit derives his title from
that purchaser. Subsequently the husband and wife came
together again, and this suit was not instituted till 1857.
The girl in the meantime had given birth to two or three
children, all of whom are sought to be recovered in this
action.

Upon this state of facts, and the charge of the court, the
jury brought in a verdict for the defendant.

It is assigned for error, that the court did not charge the
law of the case correctly. This is the principal assignment
of errors, for the others are wholly dependent upon this.
The court charged in substance that, during the marriage
relation, the husband has the management and control of
the separate property of the wife, and that it is his duty to
manage it and support his family. And while he continues
to discharge this duty a sale of her separate property can-
not be made without the joint consent of both, and that
her consent must be authenticated upon privy examination
by an officer duly authorized by law; but that, if the hus-
band abandon the wife, and fail to manage and control
her separate property, and does not contribute to her sup-
port and maintenance, by which the wife is brought to the
necessity of making provision for her own support, such a
condition of affairs invests her with authority, singly and
alone, to make sale of her separate property, and she may
alienate it without his concurrence in such a disposition of
it. Hence, if the jury believed from the evidence that the
parties were in this condition, living separate and apart at
the time of the sale authorized by the wife, the law, or at
least equity, will uphold the contract and make it valid.
Furthermore, if they were not living separate and apart at
the time of the sale, but that the wife, by false and fraudu-

lent representations, made such impression on the mind of the purchaser as an inducement to the contract of sale, and the purchaser was deceived and misled as to the fact of such separation by the suggestion of a falsehood, equity would not relieve such fraudulent vendor from the obligations of the contract. The converse of these propositions was also announced in the charge, if the jury should believe from the evidence in the opposite state of facts.

We are of opinion, that the principles set forth in the embodiment of the substance of the charge given by the court in this case have been recognized and acted upon in repeated decisions of this court, and are now too firmly established to be interfered with. And we think they are in perfect consonance with the precepts of morality as well as with the rules of equity. At the common law, where the husband failed and neglected to make a suitable provision for the wife, she might invoke the aid of the chancellor to decree her a proper maintenance and support out of his own property. And when, from his excesses and prodigality, he was wasting and squandering her separate estate, he could be compelled to settle upon her an adequate provision for her and her children. The wife's slaves in this case being in the possession of another while they were separated and living apart, if he, the husband, had sought to obtain the possession of them, the wife would have had the right to interpose what is called the "wife's equity," and ask at the hands of the chancellor a settlement to be made upon her, and it could not have been resisted by the husband. Having renounced, then, his obligations and his duties in his marital relations, as the proof shows in this case he had done at the time the wife made sale of the property, it would be inequitable now to permit him to reclaim what he had justly forfeited by his abandonment of duty. And as a married woman is no more permitted by law to perpetrate a fraud than a *feme sole*, it is but just-

ice to substitute the purchaser in this case to the "wife's equity," and affirm the judgment of the court below, which is accordingly done.

JUDGMENT AFFIRMED.