## Martha E. Sorrel *v.* W. J. Clayton.

1. Married Woman, when not .liable. In 1864 the husband was a soldier in the Confederate army, and absent from home; during his absence his wife borrowed two thousand two hundred and four pounds of ginned cotton, while engaged in managing their plantation for him, agreeing to return it. In a suit against the wife for the value of the cotton, *held,*

> 1. That during the absence of the husband she was not in the legal meaning of the term " living separate and apart from her husband,' and was not in the transaction acting as a *femme sole,* so as to be individually liable for the return of the cotton.
>
> 2. To render the separate property of the wife liable for the debt it must have been shown that the debt was contracted by the wife, or her authorized agent, for necessaries for herself and children, and that they were reasonable and proper, in themselves, and that it was necessary she should so make her separate estate liable.

2. Subrogation. See facts in opinion held not sufficient to entitle one to maintain a suit in his own name on a claim alleged by him to have been paid for a third party.

Appeal from Wharton. Tried below before the Hon W. H. Burkhardt.

Clayton, on the 14th November, 1871, sued Mrs. Sorrel. His petition charged, that in May, 1864, she borrowed of him two thousand two hundred pounds of ginned cotton, to be returned out of the crop of 1865; that the cotton belonged to the estate of W. H. Reeves, of which he was then administrator; that upon final settlement he accounted for it to the estate, and thereby became the owner, and prayed judgment for the amount. To this petition Mrs. Sorrel filed a general demurrer and a general denial. She answered specially, that at the time of the loan of the cotton she was the wife of R. H. D. Sorrel; that the cotton never was Clayton's, but Mrs. Reeves', and Clayton her overseer; that R. H. D. Sorrel settled with Clayton for the cotton by offsets of mutual accounts, and she annexes the account in the handwriting of Clayton and Sorrel; that Clayton, in 1867, sued her husband on the account, and that suit was dismissed.

Clayton filed an amended petition, in which he stated that when he made a final settlement of the estate of W. H. Reeves, he paid Mrs. Reeves, his surviving wife, for the cotton, and that when he loaned the cotton to Mrs. Sorrel, she promised to pay the same in specie or its value; that at the time R. H. D. Sorrel was in the confederate army: that Mrs. Sorrel was at home, having the full management and control of his affairs, purchasing plantation and family supplies, etc.; that she obtained the cotton to barter it for family supplies, for herself and her husband's children, for his and her slaves, for their household and plantation supplies, and that said supplies were necessary. He denied that it was ever settled for, and said he returned the corn, etc.

There was much more to the same effect, which it is not material to notice. Clayton again amended, alleging that Sorrel died insolvent.

The defendant replied, alleging that Sorrel had ample property at the time of the loan of the cotton, and denying that there was any necessity or design to bind her separate estate; that his income was at least twenty thousand dollars a

year. She averred also that Sorrel settled the whole matter with Mrs. Reeves, and denied that Clayton ever settled for it with Mrs. Reeves, or that she or her husband ever had notice of it, if he did.

There were other matters set up in the pleadings, which it ·it is not necessary to notice.

The case was submitted to the judge, who overruled the defendant's demurrers and gave judgment against Mrs. Sorrel for one hundred dollars, and interest, in all one hundred and sixty-eight dollars. There was a motion for a new trial, overruled, and the defendant appealed.

Clayton admitted that the claim did not appear as a charge against defendant on his books, as administrator of Reeves' estate ; it was not shown on the inventory, nor was it ever heard of by Mrs. Reeves or her attorney, until 1866.

*Geo. Quinan*, for appellant, cited McFaddin *v.* Crumpler, 20 Texas, 376, and Magee *v.* White, 23 Texas, 192.

*Peticolas & Franks*, for appellee, contended, that as the wife at the time the cotton was borrowed was in effect a *femme sole*, managing all the affairs of the plantation during her husband's absence in the army with his consent, the fact, that her acts were subject to his approval on his return (as testified to by her), not being known to third parties who trusted her, did not affect her liability as *femme sole*, and cited Walker v. Stringfellow, 30 Texas, 570 ; Wright *v.* Hays, 10 Texas, 130 ; Cheek *v.* Bellows, 17 Texas, 617 ; Blanchet *v.* Dugat, 5 Texas, 507 ; Fullerton *v.* Doyle, 18 Texas, 18.

DEVINE, J. Appellee brought suit against appellant, at the fall term, 1871, of the District Court of Wharton County, to recover the value of two thousand two hundred and four pounds of ginned cotton, loaned it was alleged, to her in May, 1864, and to be returned out of the crop of 1865, at which time it was asserted to have been worth

thirty cents a pound. Plaintiff averred that at the time of loaning the cotton he was the administrator of the estate of Wm. J. C. Reeves, to whose estate the cotton belonged, and that he is now the owner of the claim, he having settled with the estate for it. Plaintiff amended his petition and claimed a further indebtedness of one hundred dollars, for a gin-stand, sold (it was asserted) to the husband of appellant, and for her use and benefit; the petition further charged that the cotton was loaned, to purchase necessaries for herself and her own and husband's children, for his and her negroes, and to carry on his and her plantation, and that it was necessary for herself, her slaves, and plantation; that the cotton was loaned at her request; that she was then acting as a *femme sole*, her husband being in the army; that she intended to charge her separate estate; that she is now a widow and is in possession of her own and the community property. The petition prayed for a judgment in the alternative, either against the community property, or her separate estate. The amended petition alleged other matters not material.

The defendant's answer denied all liability and asserted that she was a married woman; when the cotton was obtained it was the property of her sister Sarah I. Reeves; that her husband had settled with Mrs. Reeves and paid her for the cotton; that plaintiff was at the date of the loan the overseer of Mrs. Reeves; that he had not then, or at any time since, any interest either in the cotton or its value; that at the date of the loan it was not necessary to purchase supplies, with her husband's income being about thirty thousand dollars from the sale of his crops; that she was acting at the time as her husband's agent, he being absent temporarily in the army; that she did not intend, neither did plaintiff expect, to hold her liable for the return of the cotton; that she received no community property before or after her husband's death; that his estate is insolvent, he being declared a bankrupt, and had received his discharge in bankruptcy in 1869.

After amendments and exceptions by both parties, a jury was

waived and the cause being submitted to the court, a judgment was rendered in favor of plaintiff for one hundred and fifty-eight dollars, principal and interest, from the 1st of January, 1866.

The six grounds relied on for a reversal of the judgment are embraced in the third assignment of error : that " The judg- " ment of the court is against the law, and against the evi- " dence."

Two questions are presented for consideration in this case. The first is, does it appear from the evidence that the plaintiff's separate property is liable for the debt sued for ? and if so, has the plaintiff shown a right on his part to maintain this suit ?

In reference to the first of these questions, the evidence shows that in May, 1864, defendant was not, in the legal meaning of the term, " living separate and apart from her " husband," as in the case of Butler v. Robertson, 11 Texas, 142, and Walker v. Stringfellow, 30 Texas, 570, neither was she abandoned by her husband, as in Cheek v. Bellows, 17 Texas, 613, and Fullerton v. Doyle, 18 Texas, 3, as relied on by appellee. There is no resemblance in this to the cases cited. Defendant, at the time, was not acting as a *femme sole* in the sense in which it is applied to married women, whose acts have been held to draw after them all the legal consequences that follow the acts of a *femme sole* in her business relations with others. She was at that time acting as the agent of her husband, R. H. D. Sorrel, then temporarily absent in the army, with authority to manage the plantation subject to his approval. It is shown in the evidence that defendant's husband returned in May, 1864, from the army, and remained at home some weeks ; and plaintiff, in his amended petition, states that the gin-stand was sold to her husband in May, 1864. At this time the husband was in affluent circumstances. There was, at the date of the loan, one hundred bales of Sorrel's cotton on the plantation belonging to and under the control of defendant's husband. Plaintiff admits that Sorrel's credit was at that time good, and that he was able to support his family ; that Sorrel had one

thousand acres under cultivation, and a hundred slaves owned by himself and defendant, and the crop was about three hundred bales each year, all of which was owned or controlled by Sorrel. There is nothing in the evidence that proves, or even tends to prove, that the credit was given on the responsibility of defendant, or that the cotton loaned was in any degree necessary either for the maintenance of defendant, or her children, and as little to show that it was for the preservation or benefit of her separate property. *Prima facie*, this debt would be a charge against the community or separate property of the husband, and the facts in this case fail to show this claim to be one for which defendant can be held liable; in fact, the attempted settlement with defendant's husband in 1865 (and the mutual accounts which plaintiff admits to have been written partly by himself and in part by Sorrel) shows that it was then considered by plaintiff as the debt of the husband. " That the statutory liability may be raised, it must be "proven that the debt was contracted by the wife or her "authorized agent for necessaries for herself and children, and " that they were reasonable and proper in themselves," Christmas *v.* Smith, 10 Texas, 128. The same was held in Brown *v.* Ector, 19 Texas, 347, and in Crumpler *v.* McFaddin, 20 Texas, 376.

Were the exemption of defendant from liability a matter of doubt, this suit on the second question, as to the plaintiff's right to maintain it on his own behalf, must fail. The plaintiff has not, in our opinion, shown any right to sue in his own name as the legal or equitable owner of this claim. Plaintiff asserts, in his pleadings, and states as a witness, that the cotton loaned belonged to the estate of Wm. J. C. Reeves. Sarah J. Reeves, the widow of Wm. J. C. Reeves, and sister of defendant, was entitled to and did receive the assets of the estate. Plaintiff asserts that he is the owner of this claim, by reason, as he states, of having sold in 1864, to a Mr. Robinson, about twenty-five bales of cotton belonging to Reeves, and that in his settlement with Mrs. Reeves, he included as sold to Robinson the

two thousand two hundred and four pounds of cotton loaned to and due the Reeves estate by Sorrel, and that in this settlement he charged himself with the value of this cotton. Why he charged himself with what he had not received—paying a debt to Mrs. Reeves—for one who he admits he was not on friendly terms with, he does not state; but he stated, on his cross-examination, that Mrs. Reeves would have admitted it as a claim against the defendant, her sister, had she known anything about it. He is indebted to the estate of Wm. J. C. Reeves as overseer and administrator to a large amount, and yet, according to. his statement, he voluntarily increases that indebtedness for no cause that reason can assign, and this is done when he is owing and is about to pay over to Mrs. Reeves, or her counsel, according to his sworn statement, about eight or nine thousand dollars in specie. The plaintiff admits that this claim nowhere appears as a charge against defendant on his books as agent or administrator of Reeves' estate, that he never mentioned the existence of this claim in his settlement of it with Mrs. Reeves, neither was it made known to her attorney, or to his attorney, Whitten, who, with Mrs. Reeves' counsel, settled his accounts as administrator. The claim is not mentioned in the inventory of Wm. J. C. Reeves' estate—sworn to by plaintiff. Mrs. Reeves never heard of it until informed of it by defendant's husband in Alabama, in 1866 or 1867, when a settlement was had between them.

Omitting from our consideration all opposing evidence, the proof adduced by plaintiff fails to show his right to maintain this suit. Judgment reversed and cause remanded.

Reversed and remanded.