George et al. v. Goldsby.

## GEORGE ET AL, vs. GOLDSBY.

1. The deod of husband and wife leasing the wife's interest in land, unless acknowledged by her on private examination pursuant to the statute, ( Clay's Digest 155 § 27,) is absolutely void as to her, and incapable of confirmation, except by acts amounting to a re-delivery.
2. The husband's assignee for valuable consideration is not entitled to the wife's choses in action, as against her surviving, unless he reduces them into possession during the coverture.
3. An executor's assent to a legacy may be inferred from any act or expression on his part clearly recognizing the legatee's present right to receive it.
4. But where the executors and legatees enter into a written agreement with another person, who afterwards takes out letters of administration, by which they transfer the entire estate to him for a term of years, to be by him managed and retained until the debts are all paid, this does not amount to an assent to the legacies on the part of the executors.
5. When an administrator is cited by the Court of Probate to make final settlement, he cannot protect himself by plea setting up a written agreement, entered into between himself and the executors and legatees before letters of administration were granted to him, by which they transferred to him the entire estate for a term of years, to be by him managed and retained until all the debts were paid, and averring that he took possession of the estate and held it under the agreement, and not by the order of the court; such plea is bad on demurrer.

ERROR to the Court of Probate of Perry.

THE defendant in error was cited by the Court of Probate, at the instance of the plaintiffs in error, to make final settlement of his administration on the estate of Anderson Rochelle, deceased. He appeared, and showed cause against the settlement, setting up a written agreement entered into between himself and the executors and legatees of said Rochelle, relative to the estate. This agreemeent is set out at length in the opinion, and need not here be described. The plea was demurred to, and the demurrer overruled.

This ruling of the court, with others unnecessary to be stated, is now assigned for error.

I. W. GARROTT and A. B. MOORE, for plaintiffs in error :

The written agreement relied on by the defendant was executed while Mrs. George and Mrs. Bryant were under coverture,

and it is therefore void as to them. As they did not acknowledge the deed before any officer whatever, it cannot be pretended that the case does not come under the prohibition of our statute. —Clay Digest 155 § 127 ; Clancy on Husband and Wife 23 ; 2 Black. Com. 290; 1 N. & M. 33 ; 2 Reps. Con. Ct. 12; 3 Yeates 471; Walker 322 ; Wright 205 ; 7 S. & M. 64; 15 Maine 304 ; 1 Peters 328 ; 2 Kent's Com. 168 ; 7 Johns. 81; 1 Dev. Eq. R. 500 ; 1 Dev. & Bat. Law R. 34; *ib.* 584; 14 S. & M. 56.

A deed executed by husband and wife, but void for want of proper acknowledgment, will not be made effectual, after the death of the husband, unless by what would constitute a valid re-delivery of the deed, or amount to a new grant by her.— Miller v. Shackelford, 3 Dana 289 ; Same v. Same, 4 *ib.* 264; Shackelford v. Smith, 5 *ib.* 232; Smith v. Shackelford, 9 *ib.* 452 ; Campbell v. Holloway, 7 Johns. 81 ; Vance v. Wells, 6 Ala. 737 ; 10 U. S. Digest 16 § 28.

Even the acceptance of rent, after the husband's death, under lease made by him, will not amount to a ratification binding on the wife.—Jackson v. Holloway, 7 Johns. 81. And this case further decides, that leases are within the statute relative to conveyances of real estate by married women.

But the plea does not aver that Rochelle's creditors assented to the deed, and the proof shows that they refused to assent to it. It was, therefore, but a power to defendant, not investing him with the title, and was revocable by plaintiffs at pleasure ; and they, having demanded the property before suit brought, are not bound by the agreement.—Elmes v. Sutherland, 7 Ala. 262 ; Kemp v. Porter, *ib.* 138; Lockhart v. Wyatt, 10 *ib.* 231 ; Dale v. Bodman, 3 Metcalf 139 ; Williams v. Everett, 14 East 582; 2 Story's Equity 236 § 972 ; 2 Myl. & K. 492 ; 7 Ala. 470.

The executor and executrix are parties to the deed in their representative character; it is, therefore, a private sale or transfer by them, which is expressly prohibited by statute.— The law made it their duty to pay the debts of the estate, and to settle it ; and any attempt on their part to shift this responsibility, is void.—Clay's Digest 223 § 13 ; Weir v. Davis, 4 Ala. 442 ; Dearman v. Dearman, *ib.* 521 ; 5 Porter 64 ; Fambro v. Gantt, 12 Ala. 298.

George et al v. Goldsby. ·

The contract, then, being void as to the executor and executrix, is void *in toto*.—Chitty on Contracts 693 ; 9 Shepley 488; Story on Contracts 550, 552, 559 ; 1 Sup. U. S. Digest 58 § 20.

The contract is also void for want of mutuality. There is no valid consideration shown in it. Everything is left in the power of the grantee, the defendant ; he may do what he pleases, but can be made to do nothing. The rule of law is, that both parties must be bound, or neither is.—Branch Bank at Huntsville v. Steele, 10 Ala. 915 ; James v. Stiggins, 13 *ib*. 830.

No point was raised in the court below as to the husband's right to transfer his wife's choses in action ; it cannot, therefore, be here considered.

If this deed is sustained, it will at all times be in the power of the representatives to nullify the jurisdiction of the Probate Court over the estates of deceased persons. The statutes give this court jurisdiction and control of estates, and require it to settle and distribute them ; while this deed defeats that jurisdiction, or, at least, postpones it for fifteen years.

WM. M. MURPHY, *contra :*

1. The case of Graham v. Abercrombie, 8 Ala. 552, decides that the interest of a distributee in an unsettled estate is the subject of assignment ; if one is made, it divests the interest of the distributee.—To the same point, see Wright & Scales v. Love's Ex'rs, 2 Mur. Rep. 354 ; Powell v. Powell, 10 Ala. 900.

2. Under the will of Anderson Rochelle, deceased, the legacies vested absolutely in his widow, and Ross and Bryant, the husbands of testator's daughters. They had a right to sell, assign, or dispose of in any manner those legacies ; and such disposition would bar the right of survivorship of the wives.— Clancy on Husband & Wife 111, 112, 121, 122, and cases cited ; Reeves' Domestic Relations 4 ; 3 Peere Wms. 197 ; 2 Atk. 207 ; 1 V. & B. 405.

3. The executors assented to the legacies, by signing the agreement with Goldsby. This executrix and executor were legatees, their assent indicated by deed, reciting his interest

and granting it over.—2 Lomax on Executors and Administrators 133, and cases cited.

4. As to the question of jurisdiction, this court said in the case of Graham v. Abercrombie *et al.*, on pages 558, 559: "The powers of the Orphans' Court on the subject of the rights of distributees and legatees has concurrent jurisdiction with courts of equity." On page 559 this court deprecates the idea of driving parties to a court of equity. The case cited from 2 Murphey's Reports considers the question of jurisdiction, and concurs with our own court, that the Orphans' Court of North Carolina had concurrent jurisdiction with courts of equity, upon the subject of the rights of distributees; these cases meet and decide this question directly. Upon this point it is suggested that the case of Smith and Loveless, adm'rs, v. Hall, is adverse to the defendant. This case does not overrule the case of Graham v. Abercrombie *et al.*; on the contrary, it quotes the case with approbation to the extent that case proposed to go. On page 782, the judge says: "The cases of Graham v. Abercrombie, 8 Ala. 552, and Petty v. Wafford, 11 Ala. 143, decide *simply* that the assignee of an integral share of an estate may proceed in the Orphans' Court in his own name to obtain distribution." To this extent, and no more, we invoke these decided cases; Goldsby is the assignee of an integral share of Rochelle's estate. The case in hand does not make "different parties," does not create "partial settlements," does not "split into different portions" the distributive interests of this estate. The case at bar does not introduce to the court new parties; all are subject to the jurisdiction of the court. The parties to this agreement are the legatees and the administrator with the will annexed, all known and subject to the jurisdiction of the Orphans' Court—no stranger assignee or assignees introduced, and the integrity of the estate wholly unbroken.

5. Upon this question of jurisdiction, the court will observe that this trial was had under the "act establishing courts of probate and for other purposes," approved the 11th February, 1850.—See Pamphlet Acts page 24, 1849-50. A comparison of this act with the old law giving powers to the Orphans' Court will discover the increased jurisdiction of the probate court upon questions of fact.—See particularly sec. 8 and 9, pages 26 and 27 of Pamphlet Acts; also the last provision in

section 29, page 33; and section 30 of same page as to writs of error. This increase of power obviates the decision in the case of Willis, adm'r, v. The Heirs of Willis, 9 Ala. 330.

6. The agreement between the parties in this case is a covenant that the estate should not be settled and distributed for the term of ten years, and the execution of this agreement has the tendency to pay all the debts of the estate.

7. This agreement creates an estoppel to a distribution.

GOLDTHWAITE, J.—The facts of this case may be thus stated: Anderson Rochelle died in 1842, leaving a considerable real and personal estate. By his will he bequeathed certain specific legacies to his wife, Nancy Rochelle, and to his two daughters, Sarah E. Ross, wife of James Ross, and Mary Bryant, wife of Thomas Bryant. On the 21st of March, 1842, letters testamentary were granted to the executors named in the will, Nancy Rochelle and James Ross, and on the 22d of December, 1843, sealed articles of agreement were entered into by Nancy Rochelle, James Ross and Sarah his wife, and Thomas Bryant and Mary his wife, (the two first named acting in their representative as well as their individual capacity,) of the one part, and T. B. Goldsby of the other part. The agreement states, as the inducement for entering into the same, that the estate was involved in debt from twenty-three to twenty-five thousand dollars, and that the parties of the first part were satisfied that the entire property would be consumed in the payment of the debts, unless its representatives could obtain pecuniary aid far beyond their means, or the means of the estate ; that to save as much as possible of the property they had applied to the party of the second part, who, at their solicitation, had agreed to take upon himself the management of the estate to the best of his ability, to apply the proceeds thereof, including the labor of the slaves, &c., to the payment of the debts, to allow the family of Anderson Rochelle a proper and reasonable amount for their support, to be determined by himself, and from time to time to make such advances as the exigencies of the estate might require, also to be determined by himself ; in consideration of which, he was to have the entire control and management of the estate for ten years, and its proceeds for the same term. If during such term the proceeds of the es-

tate were not sufficient to compensate him for his services, and to reimburse him for his advancements, he was to retain the property until these objects were accomplished, such additional term, however, not to exceed five years. By the terms of the agreement, Goldsby was allowed to abandon the same at any time, on giving thirty days notice in writing to the other parties, and, in the event of his doing so, he was to be compensated for his trouble, and repaid his advances.

On the 8th June, 1846, letters of administration with the will annexed were granted to Goldsby. On the 17th November, 1851, James W. Ross having died, and his widow Sarah having intermarried with Elias George, and Thomas Bryant having also died leaving his wife Mary surviving, application was made by the said Elias George and wife and Mary Bryant, to the Probate Court, for a rule against Goldsby for a final settlement of the estate. Goldsby appeared, and showed for cause, by way of plea, the agreement referred to, averring that Sarah Ross and Mary Bryant, after the death of their respective husbands, assented to, ratified, approved and received the benefit of the same; that he took possession of the estate upon the execution of the agreement, and has controlled and managed the same according to its terms, and not by the order of the court; and that by virtue of these facts the estate was not subject to final settlement and distribution. This plea was demurred to, and the demurrer overruled.

The demurrer to the plea presents the question, as to the effect of the agreement as to Mrs. Ross and Mrs. Bryant. At the common law, leases made by the husband and wife by deed, of the wife's estate, were at her election voidable by her after her husband's death; and acceptance of rent by the wife at that period, if the right of election was not before exercised, was held to be a confirmation of the lease.—1 Roll's Ab. 349; Cro. Jac. 563; Bright on Husband and Wife 194. But this rule as to confirmation was not universal, and was regarded rather as an exception to the general disability of coverture, allowed for the advancement of agriculture, and not extending to a joint demise for a long term of years by way of mortgage; and in such cases, it could only be confirmed by a re-delivery of the deed, or acts amounting to a re-delivery.—Goodright v. Strophan, Cowp. 201. The law in relation to leases by the husband and wife, of the

estate of the latter, was changed in England by the statute 32 Hen. 8 Ch. 28; and in this State our statute requires that, to pass any estate of a married woman in lands by her deed, the instrument should first be previously acknowledged by her on a private examination before certain officers.—Clay's Dig. 155 § 27. The words of this act are general, and apply to any estate of the wife, and consequently include leases by deed.—Jackson v. Holloway, 7 Johns. 81, 87. If no estate could pass by her deed not duly acknowledged according to the mode prescribed by the statute, it is absolutely void as to her, (Barnett v. Shackelford, 6 J. J. Marsh. 532; Elliott v. Peirsal, 1 Pet. 328;) and if void, it is incapable of confirmation, except by acts amounting to a re-delivery.—Co. Litt. 215 a ; Doe v. Butcher, Doug. 50 ; Jenkins v. Church, Cowp. 482 ; Miller v. Shackelford, 3 Dana 289.

In relation to the interest of Mrs. Ross and Mrs. Bryant in the personal property, the question as to whether the assignee for a valuable consideration is not entitled to the wife's choses in action, as against her surviving, unless he has reduced them into possession during coverture, has been much discussed, and the decisions are somewhat conflicting. The inference to be drawn from the earlier cases, as well as the most respectable text writers, is, that the assignment by the husband of the wife's interest in the chose in action for a valuable consideration, will be good as against her surviving, except in those cases where the interest of the wife is of such a nature that it cannot possibly fall into possession during coverture.—Bates v. Dandy, 2 Atk. 207, reported more fully in note to Purdew v. Jackson, 1 Russ. 33 ; Earl of Salisbury v. Newton, 1 Eden 379 ; Co. Litt. 351 a, note 301 ; Roper on Husband and Wife 237 ; Clancy on Married Women 121. The first decision establishing the contrary doctrine was by Sir Thomas Plummer, M. R., in Hornsby v. Lee, 2 Mad. 15, and was afterwards affirmed by the same judge, in an opinion of great power and perspicuity, in Purdew v. Jackson, after the case had been twice argued ; and his decision was confirmed by Lord Lyndhurst, in Horner v. Morton, upon a full consideration of all the English authorities bearing upon the question. The opinion in Purdew v. Jackson is rested mainly upon the acknowledged principle of law, that marriage is not an absolute but a qualified gift to the husband

of the wife's choses in action, and that his right to them only becomes complete by a reduction into possession during its continuance; that a chose in action ceases to be a chose in action only when reduced into possession; and that the assignment does not operate to change its character, or to reduce it into possession, and if it remains in action it belongs to the wife if she survives. If the assignor had no other interest than a right to reduce the thing into possession, that same right must be what the assignor agreed to sell, and the assignee to buy.— The reasons on which the opinion is based appear to us incontrovertible, and although the new doctrine has been ably, but as we think unsuccessfully, opposed by Gibson, C. J., in 4 Rawle 483, the decisions have been acquiesced in in England, and have been received as the law in Virginia and South Carolina, (Browning v. Headly, 2 Rob. 340; Matheny v. Guess, 2 Hill's Ch. 63;) and we think they declare the law correctly.

It is urged, however, on the part of the defendants in error, that by entering into the agreement the executors assented to the legacies, and that as in that event they were *immediately* recoverable, they passed by the assignment of the husbands of the legatees. It is conceded that no direct act to manifest the assent of an executor to a legacy, is necessary. It may be implied from any act or expression on the part of the executor, which clearly recognizes a present right of the legatee to receive the legacy; but, as the consequences of an assent may be highly prejudicial to the representative, it is necessary that there should be no ambiguity in the act or expression by which his assent is manifested.— 1 Rop. Leg. 3 Ed. 736. But so far from the agreement indicating any intention by the executors to recognize the right of the legatees to receive the legacies at that time, it appears their whole object was to avoid the abatement of the legacies by transferring the whole of the estate to Goldsby for a term of years, in the hope that they might be ultimately realized by pursuing that course. In no aspect in which it can be presented, can the agreement be fairly considered as denoting the intention of the executors to assent to the legacy.

As to the personal property, therefore, our conclusion is, that the assignment by Ross and Bryant did not, under the circumstances, operate to convey the interests which their wives possessed in the estate of their father, so as to divest them of their

right of survivorship; that the deed of Mrs. Ross and Mrs. Bryant, being made under coverture, was absolutely void, and being void, could not be ratified or confirmed after the disability of coverture was removed, by any act not amounting to a re-delivery.

It follows that, as the plea does not show that it was thus confirmed, it was defective, and the demurrer should have been sustained.

The plea is also, as we think, defective for another reason.— The statutes of this State fix and prescribe the duties of the executor, and the powers of the probate court. These duties the executor takes an oath faithfully to execute, and gives bond to secure their performance. The powers of the court are limited, and it must find a warrant in the statutes for all its actions, or it acts without authority. The agreement which is set up in the present case, is outside of the executorship. Can the parties, by their contract, change the whole course of the adminstration? Can they keep the estate in the process of administration for fifteen years, not under the will, but under an agreement entered into by the executors and the legatees with a third party? There is no power in the probate court to administer a trust created by deed in reference to the assets of an estate, after that court takes administration under the law. It can then do no more than comply with the law, in duly administering upon the estate. If the trust is valid, and can be supported, the courts of chancery are the only tribunals that can give relief.

The view we have taken in relation to the plea, renders it unnecessary to determine any other question presented in argument. The judgment is reversed, and the cause remanded.