## B. P. Dority et al. v. Helen Dority.

### No. 1158.  Decided February 12, 1903.

**1.—Wife's Separate Property—Lease by Husband.**

The power of "sole management" of the wife's separate property given the husband by the statute (Rev. Stats., art. 2967) does not authorize a lease by him of her real estate for a term of more than one year; the written conveyance required therefor (Rev. Stats., art. 624) is "the conveyance of real estate the separate property of the wife," in which husband and wife must join, with her privy examination and acknowledgment (Rev. Stats., art. 635); and the wife may maintain suit to set aside such lease made by the husband alone.  (Pp. 220-222.)

**2.—Husband and Wife—Wife's Separate Property—Enjoining Husband from Interference.**

The husband, in exercising the authority given him by the statute to manage the separate property of the wife, is, in some sense, a trustee; the wife may maintain suit against him to prevent abuse of such trust, and, upon a proper showing, have injunction to restrain him from interference with her property.  (Pp. 222-226.)

**3.—Same.**

Facts showing abuse of the power of managing the wife's separate property by a husband separated but not divorced from her, considered and held to support a finding of such mismanagement and diversion of the revenues from her support as to warrant an injunction restraining him from further control over her property.  (Pp. 217-220, 226.)

Certificate of dissent from the Court of Civil Appeals for the First District, in an appeal from Nueces County.

*G. R. Scott,* for appellant.—There is no allegation or allegations in plaintiff's petition bringing her within any of the exceptions authorizing her to maintain a suit against her husband for her separate property under the laws of this State.  McIntire v. Chappell, 2 Texas, 378; McKay v. Treadwell, 8 Texas, 180; Rains v. Herring, 68 Texas, 473; O'Brien v. Hilburn, 9 Texas, 298; San Antonio & A. P. Railway Co. v. Gillum, 30 S. W. Rep., 697; Texas & P. Railway Co. v. Durrett, 57 Texas, 52; Mitchell v. Wright, 4 Texas, 283; Houston & T. C. Railway Co. v. Lackey, 12 Texas Civ. App., 229; Bennett v. Gillett, 57 S. W. Rep., 302.

If the wife owns real property and her husband is appropriating its revenues, she would have a somewhat restricted remedy, but not in the district court.  Rev. Stats., art. 2972; Trevino v. Trevino, 63 Texas, 650.

A wife can only recover her separate property from the control of her husband for waste and her support, in a divorce proceeding.

The leases from the defendant Dority to defendant Durst, and from the defendant Dority to the defendant Clarkson, and the sublease from the defendants Dority and Durst to defendant Thompson, were not conveyances as contemplated by art. 635, Rev. Stats., and did not require the wife's consent and her signature and acknowledgment, as provided by said article.  Rev. Stats., art. 635; Howard v. North, 5 Texas, 299; Rev. Stats., art. 2967.

Article 2967, vesting in the husband during marriage the sole management of all of the wife's separate property, authorizes him to lease same for any number of years without being joined by the wife.    Same as under the first proposition under this assignment; Howard v. North, 5 Texas, 299; Southern Oil Co. v. Colquitt, 28 Texas Civ. App., 292; Dykes v. O'Connor, 83 Texas, 160; Hennessey v. Savings and Loan Co., 22 Texas Civ. App., 591; Williams v. City of Galveston, 58 S. W. Rep., 551.

The rent arising from the separate property of the wife is community property, and exclusively under the control and management of the husband.    Hayden v. McMillen, 4 Texas Civ. App., 380; Schepflin v. Small, 4 Texas Civ. App., 494; Rhine v. Blake & Jenkins, 59 Texas, 244; Carr v. Tucker, 42 Texas, 330.

The law having vested in the husband the sole management of the wife's separate property during marriage, nothing short of judicial legislation can deprive him of that right.    Rev. Stats., art. 2967; also authorities under previous propositions.

Only in suits where divorces are granted are courts in this State authorized to divide community or any other property between husband and wife.    Rev. Stats., art. 2980; Wright v. Wright, 6 Texas, 31; O'Haley v. O'Haley, 31 Texas, 503.

*McCampbells & Stayton* and *J. C. Scott,* for appellee.—The husband does not own his wife's separate estate, but only has the right to manage the same as a trustee for her; and she may sue him when it becomes necessary for her to do so for the protection of her rights in the property. Ryan v. Ryan, 61 Texas, 473; Black v. Black, 62 Texas, 296; Nickerson v. Nickerson, 65 Texas, 281; O'Brien v. Hilburn, 9 Texas, 297.    See also authorities cited on pages 2062 and 2063 of 26 Am. Dig., Century ed., under the heading of "Husband and Wife," especially Roper v. Roper, 29 Ala., 247; Rainey v. Rainey, 35 Ala., 282; Shulman v. Fitzpatrick, 62 Ala., 571.    See also Sampley v. Watson, 43 Ala., 377.

If this were a suit brought by the wife under art. 2972 of Sayles' Rev. Stats., to have decreed to her so much of the proceeds of her separate estate "for the support of herself and nurture and education of her children, as the court may deem necessary," it should have been brought in the county court.    But it is not a suit of that kind.    It is a suit by the wife to recover her separate estate from the management and control of her husband on the grounds of his fraudulent attempts to permanently deprive her of it, to cancel fraudulent leases made by him in furtherance of his scheme to cheat her out of her property and convert same to his own use, and also to recover the property from those to whom he has made such fraudulent leases; and in effect a suit by the cestui que trust to remove the trustee on account of his corrupt abuse of the trust and take the property from his management and from those confederating with him, and for injunction, etc., of which character of suit the district court alone has original jurisdiction.

The law will not permit the husband to defraud and swindle his wife out of her separate property merely because she may not have sufficient grounds to secure a judgment of divorce from him, and can not have her separate property set aside to her in such judgment; but she will be protected in her property rights even as against her husband, and though she may not bring a divorce suit against him.

The husband can not lease the separate real estate of his wife without her joining him in the lease and acknowledging it privily and apart from him, the same as required by the statute for a fee simple deed of conveyance of such property. Arts. 624 and 635, Sayles' Rev. Stats., 1897; Rev. Stats., art. 628; 2 Blackstone, 310 (marginal paging), 318; cases digested in 26 Am. Dig., p. 2069; Waples on Homestead and Exemption, 433.

If the husband makes a lease of his wife's separate real estate without her joining him, and without her consenting to it, and the lessee takes possession of her land under such alleged lease, and the husband collects all the rents and refuses to allow his wife any portion thereof, and even refuses to pay the taxes on the property, and she at great sacrifice has to pay the taxes to save the property from loss by tax sale, and the lessee has at least constructive notice that the property is her separate estate, the whole transaction constitutes a legal fraud on the right of the wife.

Any trustee can be removed for abuse of his trust, whether the trust is imposed on him by law or is assumed by contract.

When a husband without cause deserts and abandons his wife, and leaves her to make a living as best she can or starve, though she is frail, weak and sickly, and leaves on her even the burden of paying the taxes on her separate property, he should not also be allowed to retain possession of the property and convert all the proceeds thereof to his own use; and that, too, while his wife is in need and want.

WILLIAMS, ASSOCIATE JUSTICE.—This case comes to us upon certificate of dissent from the Court of Civil Appeals for the First District. The action was brought in the District Court by Helen Dority against her husband, B. P. Dority, and James W. Durst, A. A. Thompson and R. P. Clarkson, for the purpose of setting aside leases of land owned by Mrs. Dority in her separate right, which had been made by her husband to the other defendants, and of establishing her own right to manage and control her separate estate as a feme sole, and to enjoin her husband from interfering therewith. The district judge held that the leases in question were void, because made in excess of the authority of the husband over his wife's separate property; that, under the facts shown, they operated as a legal fraud upon the rights of Mrs. Dority; also, in substance, that Mrs. Dority was entitled, under the circumstances developed, to the management and control of her own property and that her husband should be restrained from interfering therewith. The majority of the Court of Civil Appeals agreed with the trial court upon all of these points, and Associate Justice Pleasants dissented from

the decision upon each of them. A statement of the facts of the case is essential to an understanding of the points involved in the dissent.

The plaintiff and defendant, B. P. Dority, were married in 1873 and have acquired the property in question in such way, as held by the Court of Civil Appeals, as to make it the separate property of the wife. No question as to this is now before us. The evidence tends to show that, for several years before their separation and until the present time, plaintiff has been in very delicate health, while her husband, a wheelwright by trade, has been strong, healthy and able to work when he could secure employment. Plaintiff raised poultry, and, with cows which were her separate property, conducted a dairy, and from the products of her industry, earned, in the main, her support. Her husband earned little, and, up to two years before the trial, contributed to his wife's maintenance only a few groceries; for two years before the trial he contributed nothing. At all times he has had the management of his wife's ranch, which constituted the chief part of her separate property, and has received whatever revenue has been derived from it. They lived together on their homestead in Corpus Christi until their separation took place. Dority, while contributing little to the support of his wife, has made no claim to any part of her personal earnings. This had been the condition of affairs between them for some years before 1899. In that year the taxes upon her property and upon the homestead for the year 1898 were delinquent and the property was advertised for sale. Of this fact Dority notified his wife, saying at the same time that he could not pay the taxes and did not know where they would get the money to meet the demand. In order to meet it, Mrs. Dority executed a lease of her ranch to one Keyes at $200 per year. Her husband refused to assent to it and would not permit the lessee to take possession, considering his wife's action a reflection upon him. This, as she says, was the immediate cause of their separation. She informed her husband that she would not longer live with him, and they have since that time lived apart. This occurred October 26, 1899, and Mrs. Dority brought suit for divorce November 10, 1899, upon the ground of cruel treatment, excesses and outrages. She succeeded in the District Court, but the Court of Civil Appeals reversed the judgment in her favor, holding that the evidence showed no legal ground for divorce, and remanded the cause, which she dismissed May 16, 1901. In the meantime the parties had occupied apartments in their home, living apart, until January, 1901, and Dority had continued to assert control of the ranch and some other property; and a few days after the separation he executed to defendant Durst a lease, bearing a date anterior to the separation, by which he let to Durst the ranch for one year, with the privilege, in Durst, of taking it for two years longer, in consideration of $10 per month, and the privilege to Dority of pasturing therein some ninety head of horses, his separate property, and fifteen or twenty cattle, community property. Dority thereafter sold the horses to Durst, and the latter held the ranch until about December 23, 1900, and paid

to Dority $150 rent, all of which was applied by him to payment of attorney's fees in his litigation with his wife. In December, 1900, Dority, Durst and defendant Thompson orally agreed that the last named should take the unexpired portion of the Durst lease from December 23, 1900, to October 23, 1902, recognizing Durst as his landlord but paying to Dority rent at $20 per month and agreeing to make improvements at the rate of $5 per month. Thompson still held possession at the time of the trial of this case, and had paid to Dority $80 of rent, payment of the balance having been stopped by injunction in the divorce suit. The sum paid was also appropriated by Dority to his own use. In January, 1901, Dority left home and went to Mexico, where he remained until May 7, 1901. He then returned and offered to resume relations with his wife and to live with her as her husband, but upon her refusal to have anything to do with him, he left her in possession of the homestead and has not since molested her. On the 21st of May, 1901, Thompson being still in possession of the ranch under the agreement lasting until October, 1902, Dority executed to defendant Clarkson a lease of the property for ten years next ensuing, with privilege, in the lessee, of renewal for five years, at rental of $25 per month. It was orally agreed that Clarkson was not to have possession until the expiration of Thompson's lease. The lease also contained the provision that the lessee should, out of the rent, pay all expenses and costs incurred in resisting the attempt of any person to recover possession of the land. Dority assigned this lease contract to pay his attorney's fees and personal debts for more than $650, and a note given for money borrowed to defend a suit with other parties involving Mrs. Dority's title to the land. All of these leases were made without the knowledge or consent of Mrs. Dority. She continued, after the separation, to earn money as before, though suffering greatly from chronic sickness and becoming continually weaker and less able to work. Being defeated, as stated, in her effort to raise means to pay the taxes through a lease of her land, she borrowed the money and repaid it out of her earnings, and thus paid the taxes due up to the time of the trial upon the homestead and her separate property, while her husband was controlling the ranch and diverting its revenues to other purposes. During this period she has received nothing whatever from him, but has become indebted for various kinds of necessaries. Dority now has no property except an interest in the homestead and in the household and kitchen furniture, which is community property in use by Mrs. Dority. It is found by the Court of Civil Appeals that there is no reasonable probability of the parties ever living together again.

The record shows, that, in addition to her suit for divorce, plaintiff, on the 13th day of November, 1899, instituted in the County Court, under art. 2972, Rev. Stats., a proceeding against her husband to enforce the appropriation by him to her support of a portion of the proceeds of her lands. This he resisted and defeated, on the ground that the property had not for the five years before produced any revenue which had

been appropriated by him. The questions upon which the difference of opinion exists may be stated thus:

First. Did the power of "sole management," given by the statute to the husband over the wife's separate property, include the power, if fairly exercised, to make leases for a longer term than one year?

Second. If so, do the facts warrant the conclusion that the power was exercised, in this case, in such manner as to constitute a fraud upon the rights of the wife which entitled her to maintain an action to have the leases set aside?

Third. Do the facts justify the decree enjoining Dority from interfering with his wife's separate property?

1. The decision of the first question depends upon whether leases, such as those in question, are conveyances within the meaning of art. 635, Rev. Stats., requiring the husband and wife to join in "the conveyance of real estate the separate property of the wife," or are authorized by article 2967, giving to the husband "the sole management" of the wife's property during marriage. Article 624, a part of the same title with article 635, provides: "No estate of inheritance or freehold, or for a term of more than one year, shall be conveyed from one to another, unless the conveyance be in writing." The majority of the Court of Civil Appeals, construing the two articles together, held that the joint action of husband and wife was essential to the creation of leases for longer terms than one year, for the reason that article 624 declared such terms to be "estates in land" and the instruments creating them "conveyances," and article 635 applied to all conveyances of the real estate of the wife. The dissenting justice held that the "conveyances" intended in article 635 were only such as purported to convey the whole title of the wife. The provision of article 624 was contained in the Act of February 5, 1840, concerning conveyances, which did not expressly regulate the conveyance of the property of married women, and that provision was not connected, as it has become in the revisions, with the rule declared in article 635. The acts of February 3, 1841, and of April 30, 1846, prescribing the mode of conveyance by married women, were not adopted in the form of amendments of the Act of 1840, but by their terms they regulated the conveyance of "any estate or interest in land the separate property of the wife." Those statutes, before the revision of 1879, had been construed as prescribing an exclusive mode of conveying land of married women, and the language was so altered by the revisers as to affirmatively express this construction; and their report shows that no other change affecting this question was intended to be made in the law. As respects the question before us, article 635 has the same force and effect as the Act of 1846, of which it is a condensed revision; and consequently, if a lease for more than one year creates and passes "an estate or interest in land," the joinder of the husband and wife in its execution and the separate acknowledgment of the wife are essential to its validity. The statute regulating such conveyances, and that giving to the husband the sole management of the wife's prop-

erty, must both be observed, and it is evident that the power conferred by the latter can not include the doing by the husband, alone, of those things in which the joint action of husband and wife are required by the former. As we have seen, the question is to be determined from the language of the Act of 1846. It relates to any "deed or other writing purporting to be a conveyance of any estate or interest in land the separate property of the wife." We need not dwell upon an exact definition of the word conveyance; for from the very terms of the statute itself, it necessarily results that any writing which is necessary to convey land and which purports to convey any estate or interest in land of a married woman is a conveyance such as is meant. That a leasehold for more than one year is an estate or interest in land is recognized by the statute (article 624). When the Acts of 1841 and 1846 were adopted, the other statute, regulating conveyances generally, declared such terms for more than five years to be estates in land, and the instruments creating them to be conveyances; and the Congress, in adopting the married women's statute, must have had in mind those provisions, and by the language employed, must have meant to include such conveyances. One statute required written conveyances to pass such an interest, and the others prescribed the persons by whom and the mode in which they should be made. Ballard v. Carmichael, 83 Texas, 363. In the revision of 1879 the term for which parol leases might be made was reduced to one year, but the provision for conveyances by married women was introduced as a part of the chapter upon conveyancing, and the association between the rules, originally adopted by different statutes, was thus preserved, so that conveyances which one required to be in writing were by the other required to be executed by husband and wife, if the property conveyed were the separate estate of the wife. That such statutes, enabling husband and wife to convey the wife's separate property, apply to leases of it, has been held by courts of the highest authority, and we find no conflicting decision. George v. Goldsby, 23 Ala., 326; Chandler v. Jost, 81 Ala., 411; Warren v. Wagner, 75 Ala., 188; Jackson v. Holloway, 7 Johns., 81. Jones v. Marks, 47 Cal., 242, is authority for the proposition that a lease is a conveyance in the sense of a statutory provision like article 624. It is true that the original statutes, as well as the Revised Statutes, declare that the conveyances provided for "shall pass all the right and interest which the husband and wife, or either of them, may have in or to the property therein conveyed;" and it may be urged that this shows that only conveyances of the entire title were in contemplation. But the answer is that by "property therein conveyed" is meant the estate or interest conveyed, which need not be the whole. Otherwise, the prior use of the words, "any estate or interest," would be rendered wholly meaningless. This construction is also enforced by the decisions of this court holding that the husband and wife may mortgage her separate property, which they could not do if only empowered to convey absolutely the whole title; and others holding that the statute applies to the granting of easements over such property. Hall v. Dotson, 55 Texas,

524; Texas & P. Railway Co. v. Durrett, 57 Texas, 51. These decisions refute the contention that only alienations of the entire title of married women are regulated by the statute.

Whether or not a lease for a year, or less, by the husband of his wife's land would be valid is not involved, unless argumentatively, in the dissent certified, the difference being as to the validity of longer leases. In the case of Chandler v. Jost, supra, the court held that such leases for a year were valid, while those for longer terms were void. The opinion of this court in Ballard v. Carmichael, supra, may also have an important bearing upon this question.

We think the Court of Civil Appeals correctly held that the leases for terms in excess of one year were void, and that the wife could maintain an action to set them aside and recover the property. O'Brien v. Hillburn, 9 Texas, 297.

2. The conclusion reached upon the first question renders the second immaterial.

3. The question whether or not, at the suit of a married woman other than for divorce, a court may restrain a husband from exercising over his wife's separate property the control expressly given to him by statute during marriage, is one of grave importance and of considerable difficulty. At common law, a wife could not sue her husband. As a result of our statutes recognizing the separate existence of married women and conferring upon them capacity to own property, it is settled, in this State, that causes of action in their favor, incidental to their ownership, may arise and be asserted in the courts against their husbands. O'Brien v. Hillburn, supra; Ryan v. Ryan, 61 Texas, 473; Hall v. Hall, 52 Texas, 298; Price v. Cole, 35 Texas, 471. In general, however, the wife can not have cause of action against the husband and hence can not sue him. Thus, it was held in Nickerson v. Nickerson, 65 Texas, 282, that she can not sue her husband for a tort committed by him upon her person; and in Trevino v. Trevino, 63 Texas, 650, it was held that, except by suit for divorce or a proceeding under art. 2972, Rev. Stats., the wife can not maintain an action to require her husband to support her. Each decision is based upon the proposition that the wife had no cause of action of the character asserted. It will therefore be assumed, for the purposes of this decision, that, besides actions for divorce, the only ones which a wife may maintain against the husband are those which are founded upon her title to her separate property and are incidental to it. Whenever such a cause of action arises, it is clear, under the decisions, that she has capacity to assert it against her husband. In systems where common law and equity jurisprudence prevail, unchanged by statute, the legal title to land conveyed to the wife for her sole and separate use vests in the husband; but the equitable title vests in the wife, and equity treats the husband as trustee, holding for her benefit, and requires him to apply the fruits and revenues of the property to her use. It is a common exercise of chancery power to control the husband, as trustee, in the management

of property thus held, and, where necessity exists, to take away his powers and bestow them upon a more suitable person. In some jurisdictions, the statutes giving married women capacity to hold property expressly make their husbands trustees and subject them to removal for proper cause. The decisions cited from Alabama are based upon such a statute. Under such systems the fruits and revenues as well as the corpus of the property belong beneficially to the wife, and herein they differ from ours in an important particular. Here the title to the property is vested in the wife, and the only right or power which the husband has over it is that of sole management during marriage; but the fruits and revenues become community property, in which the husband has an equal interest, and of which he has complete power of disposal. It is thus evident that the statute confers upon the husband not only a power over the wife's separate estate, but a right with respect to it; and these are incidents of the marriage. His position, therefore, is not that of a simple trustee, as it is under the English chancery jurisprudence. If it were, the present case would not involve great difficulty. It does not follow, however, that the power given to the husband is irresponsible, or that the right is unqualified and indefeasible. Whether or not a husband, under our system, is to be regarded as a trustee for his wife, in respect of her separate estate, is a question upon which expressions of some of the most eminent justices of this court indicate differences of opinion. The opinions of Judge Hemphill show a decided tendency to liken married women's statutory separate estates to those existing under the equity jurisprudence of England, where the husband held as trustee for the sole and separate use of the wife. Of these doctrines, Judge Bell, in Magee v. White, 23 Texas, 189, said: "Their whole tendency is to the building up of a system in which all distinction will be destroyed between the statutory estate of a married woman, and an equitable estate, limited to her sole and separate use; a system in which every married woman who has a separate estate will become a ward of chancery, and her husband converted into a trustee for the management of her estate, under the supervisory power of the courts, and subject to be controlled by the court or removed from his trust whenever the court becomes dissatisfied with his management; or whenever it becomes necessary to make orders to prevent the misapplication of the rents, issues and profits of the estate." Further on he said: "If this is permitted, it will be difficult to stop short of an equity system, uncertain and oppressive, in which, as has been before said, the separate estate of the wife shall be placed under the constant supervision of the courts; and as a part of which, the courts will exercise authority to control or remove the husband from the management of his wife's property whenever they may think proper to do so, to prevent waste, misapplication of proceeds," etc.

In Richardson v. Hutchins, 68 Texas, Judge Stayton said: "While a husband does not, here, hold title to his wife's separate estate in trust for her, as he is held to do in England and in the States of this Union

generally, when a conveyance is made to a wife for her separate use and benefit and no trustee named, yet it does not follow from this that the husband is not, as to the wife's separate property, essentially a trustee, charged with duties for the violation of which any estate subject to the payment of his debts will be liable.

"A person is said to be a trustee in whom a power over property or affecting it rests for the benefit of another; and a person having such power is as essentially a trustee as is one in whom the title to the property which he has the right to control, is vested, for the benefit of another. The husband is here made by statute the trustee for the wife, with power to manage and control her separate property, and we see no reason why he shall not be held to the duties and liabilities which ordinarily attach to that relation. So long as he manages the separate estate of his wife with reasonable care, not diverting it from the purpose for which the law places it in his hands and control, though loss may result from his management, he is not liable therefor; but can it be said that such a trustee may convert the separate estate of the wife into money or other property and appropriate that to the benefit of himself or to the benefit of the community, and not be liable for its value?"

These expressions are important only because they indicate, in a general way, the conceptions of these able jurists of the nature of the statutory separate estate of married women and the husband's relation to it. In none of these cases was the question before us, or any one like it, involved; nor were the cases under consideration by Judges Bell and Stayton at all similar. Judge Bell's language would seem to indicate an inclination of the mind against the theory that the husband is trustee for the wife and subject, as such, to the control of the courts in his management of her estate; but that which he really reprobated was the adoption into our jurisprudence of the English chancery system under which the husband, purely as trustee, and the wife, as ward, would be under the constant control and supervision of the courts. His remarks do not imply even an impression that the wife has not such an interest in the proper management of her estate as to entitle her, even during marriage, to protection at the hands of the courts against mismanagement on the part of the husband. Judge Stayton's view, that the husband, in some sense, is to be regarded as trustee because he exercises powers such as belong to trustees, and is, to some extent at least, accountable as such, is in our opinion correct. That it is the duty of the husband to support the wife and that the management of her separate property is committed to him partly for that purpose is put beyond question by our statutes and decisions. One of her rights is to have this support from him, and, so far as her separate estate constitutes a fund from which the means to satisfy it are to be derived, the right is an incident to her ownership of such estate. The fruits and revenues of that estate constitute a part of such fund. Article 2972, which entitles her to go into court and secure a judgment devoting to her support a sufficient portion of the proceeds of her separate lands,

as well as the decisions of this court, clearly show this. The rights of the husband over the wife's property and his duty to manage it properly and afford her this support are thus made correlative. Wright v. Hays, 10 Texas, 133. If he wholly fails to perform this duty and can not be made to perform it by ordinary remedies, is his right to the management of her property unaffected by this repudiation of the duty that goes with it, and must the courts, because of this right, deny to the wife any redress? We think the decisions which affirm her right to sue him to enforce her property rights furnish an answer; and that the character of the remedy to which she is entitled must depend upon the necessity of the case. When the husband, by nonperformance of his duties and the abuse of his powers, has defeated the purposes of the law in conferring the right to manage the wife's property, that right should not be allowed to stand in the way. The wife owns the property and is entitled to a support out of its revenues when the husband does not furnish it, and this, in our opinion, is a right for the enforcement of which she should have an adequate remedy in the courts. If it be said that the law furnishes her a remedy by divorce, the answer is that a suit for divorce is not a remedy for the enforcement of property rights, nor can it be sustained upon a mere violation of such rights. They may be brought into and adjusted in connection with the proceeding, but are not dependent upon it. A suit for divorce can only be maintained when some of the causes prescribed by statute exist, and such causes are by no means coextensive with those which a party may have for the enforcement of rights of property. Such rights may be infringed in many ways for which there would be no remedy by divorce. Besides, if ground for divorce existed, why should the law require that they be availed of for the protection of mere property interests when, perhaps, conscientious scruples restrain the party wronged? The proceeding provided for by article 2972 may furnish a sufficient remedy in cases where the husband so manages the wife's property as to make its proceeds subject to the judgment of the court and to afford a fund adequate to the wife's maintenance, but not in cases like this, where his transactions are such that the fruits of the property can not be reached. This was demonstrated by the result of the proceeding which plaintiff instituted. The community property and the separate estate of the husband may also be made liable for necessaries for the wife, if anyone can be found to furnish them; but this, at best, uncertain means of relief wholly fails where no such property exists. And if it be true, as held in Trevino v. Trevino, supra, that the wife can not maintain an action against him to require him to support her, this only strengthens the position that she is entitled to get her support by the proper management of her separate property. Married women may also contract for necessaries and bind their separate property for the prices of them, but why should they be forced, out of respect for supposed rights of husbands, to thus consume the corpus of their estates, when their

revenues, properly applied, would supply all needs? The answer is deducible from the decisions, that when the husband totally fails in the discharge of his duty, and so diverts the fruits of the wife's property as to deprive her of the benefits which the law entitles her to receive therefrom through his management, the right and power which the law gives him to enable him the better to discharge the duty is not an obstacle to the granting of such relief as the nature of the case may require. That these rights of the wife may be asserted by herself under some circumstances, without action in the courts, although the mar-. riage is not dissolved, is settled by many decisions of this court. Wright v. Hays, supra; Cheek v. Bellows, 17 Texas, 613; Cullers v. James, 66 Texas, 494; Fullerton v. Doyle, 18 Texas, 13; Kelley v. Whitmore, 41 Texas, 648; Anna Berta Lodge v. Leverton, 42 Texas, 20; Clements v. Ewing, 71 Texas, 372; Hector v. Knox, 63 Texas, 617; Slator v. Neal, 64 Texas, 222; Davis v. Saladee, 57 Texas, 326. While these decisions may not wholly apply to a case like this, where the husband is present asserting control of the wife's property, they do affirm the principle that his right of management is dependent upon the discharge of the duties which go hand in hand with that right, and that the wife during marriage has rights of property of which she may avail herself when the purposes of the law in making the husband the manager of her estate are defeated by his abandonment of the duty. When there has been no abandonment by the husband of his rights and powers as such, it may be true that the wife is not, by the decisions referred to, restored to all the capacities of a feme sole merely by his misconduct; but we think that it is also true that if the husband has repudiated the duties and is asserting only the rights and powers of his position for selfish purposes, the wife has rights of property which she can enforce in the courts, and, if they can only be adequately enforced by enjoining the husband from controlling her property, that this may be done. We do not understand that Justice Pleasants holds that, in no case, could a wife be entitled to such relief; but understand him as holding that the facts in this record did not justify such action. We shall not comment at length on the facts. We are bound by the conclusions of the court, if there was any evidence to sustain them, and whether there was or not is the question presented by the certificate.

We think the facts stated justify the conclusions that the husband wholly and habitually failed-to support his wife; that he has had the management of property belonging to her, the revenues of which, properly utilized, would have supported her or at least have greatly lessened the hardships of her situation; that he has so systematically and so long managed to keep them out of her reach as to justify the inference that he will continue to do so, and that there is no other remedy afforded by law which will enable her to get the benefit of her property but to restrain him from its management and leave her free to utilize it for herself. The Court of Civil Appeals has merely stated the conclusion that the judgment of the District Court was sustained by the

facts, and we must presume that the court drew all conclusions necessary to sustain its judgment, so far as there is evidence tending to establish them. We are not to be understood as holding that the mere fact of a separation, caused by an unjustifiable refusal of a wife to live with her husband, would entitle her to such relief as is here granted, if the husband is present asserting his rights and attempting to perform his duties. It may be conceded that in such a case his rights would continue, for the reason that the wife can not, by her own acts, terminate them. But his right would be to manage the property, as the law intends he shall manage it, for the purposes for which it is committed to his care. The rights of the wife with respect to her separate property would continue in full force, and her fault in causing the separation would not bar her assertion of them and would not therefore protect the husband in the misuse of her property. It is said that the disposition which the husband has made of money received and of other property was within his powers. This may be true, but it does not meet the question as to whether or not he should be left free, in this way, to continue to defeat the rights of his wife. That question goes deeper and brings up for review his exercise of the powers and rights intrusted to him and the effect thereof upon the rights and interests of his wife. Each act of his, as between his wife and third parties, may be within his lawful power while it lasts, and yet as between himself and wife, his course of conduct may be an utter perversion and abuse of those powers.

We are of the opinion that the judgment of the majority of the Court of Civil Appeals is sustained by the evidence stated in the certificate.