### LEWIS BROS. v. PENDLETON et al.
### (No. 2303.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 29, 1920. Rehearing Denied Jan. 27, 1921.)

1. **Frauds, statute of &#9901;44(4)—Assignment of lease for more than one year must be in writing.**

Under Rev. St. art. 3965, requiring leases for a longer term than one year to be in writing, and article 1103, providing that no estate in lands for more than one year shall be conveyed except by writing, an assignment of a lease for more than one year must be in writing.

2. **Frauds, statute of &#9901;131(2)—Parol modification of contract assigning lease as to time for performance not invalid.**

Where an assignment of a lease for more than one year as part of a sale of a business was in writing, and the written contract provided for making of the cash payment within 37 days, a parol agreement waiving or modifying the provision as to time for performance because of difficulty in obtaining the lessor's consent to the assignment was not invalid because not in writing.

3. **Contracts &#9901;237(1)—Extension of time for performance held not to require new consideration.**

Where a contract for the sale of a business required that the cash payment be made within 37 days, an agreement extending the time for such payment because the lessor's consent to the assignment of a lease had not been obtained did not require any new consideration; the mutual promises expressed in the original contract being sufficient to support the extension.

#### On Motion for Rehearing.

4. **Appeal and error &#9901;1054(1)—Admission of parol evidence in trial before court on matter not in issue held immaterial.**

Where a contract for the sale of a business provided for a deposit of forfeit money and for payment in case of nonperformance to the buyers, and the buyers sued for the stipulated damages for the seller's nonperformance, the admission of evidence of a parol agreement modifying the consideration for the sale was immaterial, the trial being before the court, and it not being necessary to prove a consideration different from that expressed.

Appeal form District Court, Smith County; J. R. Warren, Judge.

Action by D. R. Pendleton and others against Lewis Bros. Judgment for plaintiffs, and defendants appeal. Affirmed.

Hanson & Butler and J. A. Bulloch, all of Tyler, for appellants.

Marsh & McIlwaine, of Tyler, for appellees.

HODGES, J. This appeal is from a judgment for $1,000 against the appellants as stipulated damages for the breach of a contract to sell an equipped moving picture show, including the assignment of an unexpired lease of a building situated in the city of Tyler, Tex. The following is the substance of the material facts found and filed by the trial court:

In June, 1918, the appellants, N. and F. Lewis, of Tyler, Tex., entered into a written contract with S. G. and T. W. Parks by the terms of which Lewis Bros. leased from Parks, for a period of 10 years from September 1, 1918, a two-story building situated in the city of Tyler. The consideration to be paid was $225 per month. It was expressly provided in the lease contract that the lessees should not assign the lease or sublet the premises without the written consent of the owners. Lewis Bros. thereafter took possession of the building and rearranged the interior for a moving picture show, which became known as the "Electric Palace." On April 11, 1919, Lewis Bros., desiring to sell the above-mentioned property, entered into a written contract with the appellees for the sale of the picture show together with all their rights under the lease contract with Parks. This contract provided for a payment by appellees of $20,000 to Lewis Bros., half of this to be cash, and the remainder divided into four equal installments. It was also provided that the cash payment was to be made within 37 days from the date of the contract,

and the appellees bound themselves to organize themselves a corporation in accordance with the laws of Texas, with a fully paid up capital stock of $20,000. A part of that stock was to be delivered to J. W. Fitzgerald, of Tyler, Tex., as collateral security for the unpaid balance due Lewis Bros. under the contract. It was further agreed that each of the parties would deposit with J. W. Fitzgerald as trustee the sum of $1,000 in cash as forfeit money, and in the event the parties of the first part, the appellees, should fail to pay Lewis Bros. the amount stipulated, and otherwise fully perform their contract, within 37 days from the date thereof, then the $2,000 forfeit money should become the property of Lewis Bros. On the other hand, if the appellees, parties of the first part, should within the 37 days offer to pay the $10,000 in cash and otherwise perform their contract, and Lewis Bros. should fail to perform their part of the contract, then the $2,000 put up as forfeit money should at once become the property of the appellees. It was further understood that this contract was not to be consummated unless the appellees, or the corporation to be organized by them, should be able to procure a transfer of the lease on the building then occupied by the Electric Palace. In the event the parties were unable to get the written consent of Parks to the transfer of the lease to the appellees, or to the corporation which they contemplated organizing, with some other clauses inserted in the lease, then neither party should be bound to carry out the contract, and each might claim half of the money put up as a forfeit. On May 7th following the execution of this contract N. Lewis, who appears as the principal representative of Lewis Bros., wrote a letter to S. G. Parks, who resided at Beaumont, giving the substance of the contract of sale to the appellees, and requesting Parks' assent to an assignment of the lease. In his reply Parks intimated that he was willing to agree to an assignment, but referred Lewis to hi~ agent, Mrs. Madden, at Tyler, Tex., for terms. Negotiations were thereafter opened with Mrs. Madden, who from time to time consulted Parks. In these negotiations Parks, while willing to agree to an assignment of the lease and a release of Lewis Bros. from any further liability on their contract, insisted upon the payment of an increased monthly rental of the premises and upon the making of certain improvements by the lessees at their own expense. These terms were not satisfactory to the appellees, and their negotiations extended over a period of time beyond the 37 days fixed in the original contract.

The court finds that, when it became apparent that the contract could not be consummated within the time fixed in the written contract, Lewis agreed to an extension of that time. He finds that on the 24th of May there was a conference between the plaintiffs and the defendants in which it was agreed that Wilkerson (one of the appellees) and N. Lewis should go to Beaumont to see Parks in person, and it was arranged that they should leave Tyler on the morning of May 26. On that day, before the departure of the train, Lewis, upon the ground that it was impossible for him to leave, failed to go. Wilkerson, however, went on to Beaumont, saw Parks in person, and discussed with him the matter of transferring the lease. Wilkerson then proposed that he and his associates would give Parks security other than their personal guaranty for the performance of the lease contract. No agreement, however, was then reached with Parks. On the 31st of May following Smith, one of the plaintiffs, stated to Mrs. Madden, Parks' agent, that he and his associates would pay Parks $250 per month for the premises for the first four years and three months of the remainder of the lease, would make certain improvements as provided in the lease contract, and would pay the sum of $275 per month for the remaining five years; and, if the improvements were not made within the first four years, they would pay $300 per month for the last five years. That offer was telegraphed on the same day to Parks by Mrs. Madden, and a telegram later in the same day was received accepting the offer. Mrs. Madden notified the appellees about 12:30 p. m. of the receipt and contents of her telegram. About 3:20 p. m. of the same day Lewis notified the appellees that he would not further carry out his contract; that the time limit had expired and he had disposed of the property to other parties.

Upon these and other facts not necessary to here state the court concluded, as a matter of law, that Lewis Bros., having waived the performance of the contract within the 37 days, and having agreed to an extension of the time for its performance, and having further agreed to accept cash for the deferred payments originally provided in the contract with the appellees in lieu of the notes mentioned, and knowing that plaintiffs were negotiating for the transfer of the lease after the expiration of the 37 days, and having caused the plaintiffs to incur expense in making trips to Beaumont and otherwise, were estopped from revoking the contract on account of its nonperformance within the 37 days without first giving plaintiffs proper notice. He accordingly rendered a judgment in favor of the appellees for the sum of $1,000 as stipulated damages.

[1] The appellants assail the judgment upon the following ground: The subject-matter of the written contract between them and the appellees being in part the assignment of a lease of real estate for a longer term than one year, an extension of the period of performance was a modification which the law required to be in writing, and the parol agree-

ment here relied on to show an extension of time was insufficient. If that proposition is correct, then this judgment is erroneous, because the evidence clearly shows that the appellees were not able to perform their contract for the purchase of the property until after the expiration of the time originally agreed upon in the written contract. Article 3965 of our latest Revised Civil Statutes requires contracts for the lease of land for a longer term than one year to be in writing. Article 1103, also to be considered in this connection, is as follows:

"No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing."

Counsel for appellees refer to the case of Moser v. Tucker, 87 Tex. 94, 26 S. W. 1044, as authority for the proposition that appellants' leasehold interest in the property was not an interest or estate which comes within the provision of this article. The question decided in the case referred to was that a leasehold interest was not subject to seizure for debt under an execution. The reasons assigned were that the statute forbids an assignment or subletting by the tenant without the consent of the landlord. The conclusion was that a purchaser at an execution sale of a leasehold could acquire no interest without the consent of the landlord. Hence there was no estate which the lessee alone could alienate. In a later case, Copeland v. Gro. Co., 63 S. W. 887, the Court of Civil Appeals of the Third District held that, when the landlord expressly waived the provision of the statute, the leasehold was subject to seizure for the debts of the tenant. Let us suppose, in this instance, that instead of the contract between the appellants and the appellees being for an assignment of the entire remainder of the term, it had been for a sublease extending over a period of five years. Even with the written consent of Parks the contract for subletting the premises, to be valid, must have been in writing. If the contract conveying a part of the term must be in writing, then, for the same reason, the contract conveying the entire term must be in writing. In subletting the first tenant becomes the landlord of the second tenant, unless there is a contract to which the landlord is a party which alters their relations to each other. In Dority v. Dority, 96 Tex. 215, 71 S. W 950, 60 L. R. A. 941, the Supreme Court was called upon to determine whether or not a husband could lease the separate property of the wife for a longer term than one year without her written concurrence. It was held that he could not, and the decision was based upon the terms of the statute last quoted. Justice Williams, who rendered the opinion, discussed the subject at some length, and finally concluded that a leasehold interest extending over a period of more than one year was an interest in land which could only be conveyed by the written concurrence of the wife. If under the terms of article 1103 a written conveyance was required from Parks in order to invest the appellants with their leasehold interest, then it logically follows that a conveyance of equal dignity is required to enable them to convey that interest to the appellees. We conclude that both of the articles referred to require the assignment of a lease for more than one year to be in writing.

[2] But in the case under consideration the contract of the appellants to assign their leasehold interest was in writing. The parol provisions here assailed relate only to the length of time which that contract might remain open for performance. The designation of a definite period of time for its performance was not a feature essential to the validity of the contract, if otherwise in proper form; hence a parol agreement waiving or modifying that provision was not an alteration which must be in writing. If such a provision might have been omitted, or might have been in parol only, then it could by parol agreement be modified or eliminated. Bullis v. Mining Co., 75 Tex. 540, 12 S. W. 397; Adams v. Hughes, 140 S. W. 1168; 25 R. C. L. p. 710.

[3] It is also contended that the evidence was insufficient to sustain a finding by the court that there had been an agreement to extend the time within which the appellees might perform their contract, and further that, if the evidence upon that issue was sufficient, the agreement was without any consideration. The statement of facts discloses sufficient evidence, we think, to sustain the finding of the court that an extension of time for the performance of the contract had been agreed upon. Such an agreement did not, under the circumstances, require any new consideration. The mutual promises of the parties expressed in the original contract, which were simply readopted for the extended period, were sufficient to support that agreement. Caples v. Port Huron E. & T. Co., 61 Tex. Civ. App. 646, 131 S. W. 305.

We have carefully considered the remaining assignments of error, and overrule them.

The judgment is affirmed.

### On Motion for Rehearing.

In a motion for a rehearing appellants challenge the correctness of the following statement made in the original opinion:

"The parol provisions here assailed relate only to the length of time which that contract might remain open for performance. The designation of a definite period of time for its performance was not a feature essential to the validity of the contract, if otherwise in proper

form. Hence a parol agreement waiving or modifying that provision was not an alteration which must be in writing."

[4] It is the statement of facts made in the above extract which is assailed. It is true complaint was made by the appellants of the admission of testimony tending to show that a parol agreement had been made which modified the consideration to be paid to the appellants. We regarded the admission of that testimony as unimportant in determining the controlling questions in this appeal. The trial was before the court without a jury, and the suit was not to enforce the terms of the contract, but to recover the damages stipulated in the original writing. It was not necessary to prove a consideration different from that expressed in the writing in order to sustain the plaintiffs' demand for damages. The rights which they asserted were conferred by the writing itself, the controlling question being: Was that writing still a valid, subsisting agreement?

The motion is overruled.

⬷═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes