HOUSTON, E. & W. T. RY. CO. v. CAVANAUGH. (No. 6733.)

(Court of Civil Appeals of Texas. Galveston. Jan. 19, 1915. Rehearing Denied Feb. 4, 1915.)

1. EVIDENCE ⬅➡544—EXPERTS—COMPETENCY— PRELIMINARY EVIDENCE.

Testimony of a witness, showing his long-continued familiarity with and experience in the use and effect of dynamite as an explosive, *held* to qualify him to testify as an expert as to the effect of exploding dynamite on a human body.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2356; Dec. Dig. ⬅➡544.]

2. EVIDENCE ⬅➡570 — EXPERT TESTIMONY — WEIGHT.

The weight of the testimony of an expert is for the court on a trial without a jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2395; Dec. Dig. ⬅➡570.]

3. APPEAL AND ERROR ⬅➡1050 — HARMLESS ERROR—ADMISSION OF EVIDENCE.

Any error in admission of testimony is harmless, other witnesses having, without objection, given similar testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⬅➡1050.]

4. APPEAL AND ERROR ⬅➡690—RECORD—REVIEW.

The record not affirmatively showing articles were admitted, an assignment of error to their admission must be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2897–2899, 2902–2904, 2906, 2908; Dec. Dig. ⬅➡690.]

5. APPEAL AND ERROR ⬅➡204—OBJECTIONS IN LOWER COURT—EVIDENCE.

Admission of evidence having been without objection, error cannot be predicated thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1258–1272, 1274–1278, 1280, 1569; Dec. Dig. ⬅➡204.]

6. APPEAL AND ERROR ⬅➡501—BILL OF EXCEPTIONS—EVIDENCE.

Exception to admission of evidence need not be preserved by bill of exceptions, but by provision of Rev. St. 1911, art. 2060, may be reserved and noted in the statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2300–2305; Dec. Dig. ⬅➡501.]

7. APPEAL AND ERROR ⬅➡501—STATEMENT OF FACTS—DISPENSING WITH BILL OF EXCEPTIONS.

One relying on the right under Rev. St. 1911, art. 2060, to have his objections and exceptions noted in the statement of facts, thus dis-

pensing with bills of exceptions, must present the grounds of his objections clearly, so that the appellate court will not be left in doubt as to which one of numerous objections and exceptions is presented for review, or required to search a mass of statements of facts to ascertain what objection was made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2300–2305; Dec. Dig. ☜501.]

8. MUNICIPAL CORPORATIONS ☜122 — ORDINANCES—ADOPTION—EVIDENCE.

Whether a city council adopted an ordinance is a question of fact, and to show that it was passed, it may, if necessary, be shown a mistake in the minutes was made, by reciting that it was adopted as a chapter instead of a title.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 281–289; Dec. Dig. ☜122.]

9. EXPLOSIVES ☜8—PERSONAL INJURY—CONCURRENT PROXIMATE CAUSE.

Defendant's negligence per se, in keeping dynamite in quantity in its warehouse, in violation of an ordinance, was a concurrent proximate cause of plaintiff's injury from explosion thereof, rendering it liable whether its servant who caused the explosion was at the time performing any service for it, or negligently or intentionally caused it.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. ☜8.]

10. EXPLOSIVES ☜8—ILLEGAL KEEPING—LIABILITY.

A holding that the keeping by a railroad company for over two days from 200 to 400 pounds of dynamite in the warehouse in its depot, in the center of the town, in close proximity to business houses and dwellings, constituted a public nuisance, rendering it liable for injury to one in an office in the vicinity from explosion of the dynamite, without regard to its care in keeping it, would be justified, did not under an ordinance render its keeping the dynamite negligence per se.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. ☜8.]

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Action by M. D. Cavanaugh against the Houston, East & West Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and John T. Garrison, all of Houston, for appellant. K. W. Denman, of Lufkin, and Woods, Harris & King, of Houston, for appellee.

McMEANS, J. This suit was brought by M. D. Cavanaugh against the Houston, East & West Texas Railway Company to recover damages for personal injuries sustained by him by reason of an explosion of dynamite in the depot of defendant in the city of Lufkin. Plaintiff alleged, in substance, that he was an employé of the Wells Fargo & Company's Express, whose office was situated about 150 or 200 feet from the defendant's depot; that on the night of March 2, 1913, while in the performance of his duties in the office of the express company, a large quantity of dynamite in defendant's said depot exploded; and that the force of the explosion threw him to the floor and caused the injuries for which he sued. The grounds of negligence upon which a recovery was predicated were alleged to be: (1) The storing by defendant in its said depot at and before the time of the explosion more than 25 pounds of dynamite and more than 50 gallons of gasoline, in violation of an ordinance of the city of Lufkin; (2) in maintaining a nuisance as at common law by keeping and permitting to be kept and stored great quantities of dynamite and gasoline in its depot in the center of the town of Lufkin, where hundreds of people congregated daily for the purpose of taking passage upon appellant's trains and transacting business with appellant, delivering and receiving freight, and at a point in a central place in said city around which and within a few hundred feet of which numerous residences and business houses were occupied by numbers of people; (3) that appellant, having at the time of the explosion great quantities of dynamite and gasoline in its warehouse, negligently permitted the gasoline containers to become and remain in a leaky condition, and the warehouse to collect the gases and vapors arising from the escaped gasoline, and while in such condition permitted its employé, George Frank Parsons, to enter said warehouse in the discharge of his duties to plaintiff, or for the performance of work for himself, and who while there stepped upon or struck a match, igniting the gases arising from the escaped gasoline, causing the dynamite to explode. Other grounds of negligence were alleged which we deem not necessary to be stated. Defendant answered denying each ground of negligence charged, but admitting the explosion of dynamite. It further denied that its employé George Frank Parsons was performing any service for it at the time he entered its warehouse immediately preceding the explosion, and charged that the dynamite was exploded intentionally by its said employé. A trial by the court without a jury resulted in a judgment for plaintiff for $7,500, from which the defendant has appealed.

The evidence shows that defendant's depot and warehouse were in the same building, and were within the corporate limits of the city of Lufkin, and near many dwellings and business houses; that a great many people visited the depot for the purpose of taking passage upon trains and for the transaction of other business with defendant; that on the afternoon of February 28, 1913, a large quantity of dynamite had been unloaded by defendant from its cars into its warehouse. On March 1, 1913, about 1,000 pounds of this dynamite was removed by the consignor, but there still remained about 200 or 400 pounds. On Sunday night, March 2, 1913, about 10 o'clock, the dynamite remaining in the warehouse exploded, and

by reason thereof plaintiff, who was at work in the express office near the warehouse, received physical injuries, and was damaged in the amount of the judgment.

The city of Lufkin was duly incorporated under the general law. At and before the time of the explosion, there was in force in said city an ordinance prohibiting any person or corporation from keeping within the city limits in any store, house, shop, or building, more than 25 pounds of dynamite or more than 50 gallons of gasoline. It was shown that on Saturday, the day before the explosion, there were in defendant's warehouse, and situated about three or four feet from the dynamite, about three or four barrels of gasoline, and the gasoline was leaking to such an extent as to wet the floor "around there." One George Frank Parsons was in the employment of defendant as a warehouseman at Lufkin; his duties being to receive and deliver freight, and his activities being largely confined to work in the warehouse. His desk was situated some six or eight feet from the dynamite. His office hours were from 8 o'clock in the morning to 5:30 o'clock in the afternoon, but he not infrequently worked at his desk in the warehouse at night. He was permitted by defendant to carry a key to the warehouse and could admit himself at any hour. On Sunday, March 2, 1913, the warehouse remained closed all day. In the early evening of that day, Parsons went to the depot and did some work at his desk, then left, and in company with his sister and a friend went to church, and, after the services were over, accompanied his sister and friend to the house of his stepmother, where he also resided, and, with the statement that he had some unfinished work to do at the depot, bade them good night and left the house. About 10 o'clock that night, he went into the telegraph office in the depot, and invited the operator to go with him to a restaurant, about 150 feet distant, to get lunch, and both started to the restaurant; but, before reaching it, Parsons told the operator to go ahead and order for both, that he had to go back to the warehouse to attend to some unfinished business that had to be attended to right away, and that he would join the operator at the restaurant when he had finished. They were then about 70 feet from the depot. After this conversation, Parsons went back toward the warehouse, and when the operator last saw him he was going into the baggageroom, and about four minutes later the explosion occurred. The explosion set fire to the building, and the end in which the warehouse was situated was partly destroyed. Parsons' body was not found in the warehouse nor anywhere in the vicinity. Some pieces of bones that were identified as bones of a human skull, covered with what was thought by chemists to be human blood, and to which were attached hairs identified as human hairs, were found a short distance from the warehouse, and also a bunch of keys, which were identified as belonging to Parsons, was found in the same locality.

Defendant strongly contended on the trial that Parsons intentionally exploded the dynamite, and that he escaped uninjured. To prove this, it introduced in evidence the deposition of two witnesses, sisters, the oldest being 15 years of age, who live at Bisbee, Ariz., and who formerly lived in Lufkin, and who testified that they knew Parsons well, and both testified that they saw Parsons in Bisbee at a date subsequent to the explosion. It was also shown that a certain interline ticket, No. 544, was missing from the ticket files of the Lufkin office of defendant; that this ticket was used from Houston to El Paso, and was taken up by a conductor after leaving El Paso, and the party holding same was given an exchange slip which gave him the right to ride to California; that this exchange slip was never turned in; and that the coupon entitling the holder to transportation from Lufkin to Houston was never used. Norman Stokes, 18 years of age, testified for defendant that the bones found near the warehouse, and which were indentified as pieces of bones of a human skull, were placed there by him after the explosion; that he got the bones at a slaughterhouse near town; and that he placed them there to see whether the doctors could tell the difference between beef bones and human bones. It was also shown that a short time before the explosion Parsons had taken out several policies of insurance upon his life, in which his stepmother, Mrs. Lena Parsons, was named as beneficiary.

[1, 2] On the trial the witness Moore was asked the following question:

"Now, Mr. Moore, I will ask you from your experience in the handling of dynamite, and the explosion of dynamite, and its effect, and all about it, as you have stated from your experience with it and its use, if there had been a man in the freight depot, within a few feet of this 400 pounds of dynamite, or 200 pounds, whichever it was, at the time it exploded, what effect would that explosion have had upon the man within a few feet of it?"

This question was objected to on the ground that the witness had not shown his qualification to testify as an expert as to the effect of exploding dynamite upon the human body. The objection being overruled, the witness answered, in substance, that a man, or any living substance, would have been blown all to pieces. To the admission of this testimony defendant duly preserved a bill of exceptions and presents the question to us by its first assignment of error.

We are of the opinion that the assignment should be overruled. Before the question was put to the witness, he had testified substantially as follows:

"I have used dynamite a great deal, and would say that I guess I have been using it ever since they commenced making it. I have used it all of the time in connection with the railroad con-

struction work. I have been using it for about 30 years, and maybe some time longer than that. I have been using it in this construction work for the purpose of blowing rocks and blowing stumps out of the ground, and such as that, during all of the time that I have used it. I think that I am acquainted with the effect of dynamite as an explosive. I have used it constantly for the time I said, and have never been engaged in anything else at all during that entire time. I know that you can take a stump, say, four or five feet through, and blow it out of the ground with 15 or 20 pounds of dynamite. I have also seen the effect of dynamite upon the human body—a person. I have seen two persons killed by dynamite. These two persons that were killed were working for me at the time. I do not remember, now, just exactly how much dynamite exploded at the time these two persons were killed; but I think about 25 or 30 sticks, and I know not over 40 sticks. These were one-pound sticks I am speaking about. This happened while I was at work building on the Santa Fé tracks from Cleveland over to another place. The dynamite exploded and the Mexicans were dead there. Two of them were dead, and one of them was blown across the right of way, and the other one about 20 feet therefrom."

We think this testimony, showing as it does such long-continued familiarity with and experience in the use and effect of dynamite as an explosive, qualified the witness to testify as an expert. The weight of his testimony was for the court. The assignment is overruled, as is also the fourth assignment, which complains of the admission of similar testimony of the witness Jourdan, who the evidence, we think, shows was also qualified to testify as an expert.

[3] Appellant's second assignment is as follows:

"The court erred in permitting the witness Gus Strouble to testify, over the objection of the defendant, that George Frank Parsons, on the night of March 2, 1913, after he and his sister and the witness had returned from church, told him when he left his mother's house that he was going back to the depot to do some work, for the reason that the same is hearsay and inadmissible."

It is not necessary for us to determine whether the testimony was admissible in view of the fact that other witnesses testified to similar declarations upon the part of Parsons, without objection, and therefore, if the testimony was not admissible over the objection urged, the error in admitting it was harmless.

[4, 5] The third assignment complains of the action of the court in permitting plaintiff to introduce in evidence, over the defendant's objection, the bones claimed to have been found near the warehouse, and the testimony of Dr. Terrell to the effect that the blood on the bones was human blood. It does not affirmatively appear from the record that the bones mentioned in the assignment were in fact introduced in evidence, but it does appear that the testimony of Dr. Terrell, as to his examination of the bones, was admitted without objection. The assignment is overruled.

[6, 7] On the trial the plaintiff introduced in evidence the following ordinance of the city of Lufkin, which was in force before and at the time of the explosion:

"Ordinance. (Art. 101.) It shall be unlawful for any person, persons, or corporation, within the corporation limits of the city, to keep on hand, for sale or otherwise, in any house, store, shop or building, more than twenty-five pounds, in all, of gun or blasting powder, dynamite, nitroglycerine or other high explosives, or more than one hundred gallons, in all, of kerosene or other illuminating oils, or more than fifty gallons, in all, of turpentine, oil of vitriol, gasoline, naphtha, or other oils or liquids of a combustible nature."

By its fifth assignment defendant complains of the action of the court in admitting this ordinance in evidence over its objection. Under this assignment it presents the following proposition:

"Appellee, plaintiff below, sought to hold defendant company liable for keeping in its depot dynamite in excess of 25 pounds, alleging that it was in violation of a certain city ordinance duly enacted by the city of Lufkin. Before this ordinance could be introduced, it was incumbent upon plaintiff to show that said ordinance had been legally enacted as required by statute, and, the plaintiff having failed to show that said ordinance was legally enacted and in force and effect at the time of the explosion, the same was immaterial and prejudicial to the rights of the defendant."

The exception to the action of the court in admitting the ordinance in evidence was not preserved by a bill signed by the judge and filed by the clerk, but was reserved and noted in the statement of facts, which is permissible. R. S. art. 2060. While plaintiff was attempting to lay the proper predicate for the introduction of the ordinance, quite a number of witnesses were examined touching the manner and regularity of its adoption by the city council. They were examined, cross-examined, re-examined and re-crossed, and their testimony, together with the numerous objections made by both parties, cover about 20 printed pages of appellant's brief. We have counted 16 objections urged by the defendant to various parts of the testimony of the several witnesses, and 6 made by the plaintiff. At one point it appears that the defendant itself introduced the ordinance, but later on it seems to be insisted that it was not introduced as evidence in the case but for some other purpose. During the course of the colloquy, all of the ordinances of the city of Lufkin seem to have been introduced by plaintiff and quite a number of them by defendant. As presented, the mind of this court is left in utter and hopeless confusion as to what objection of defendant to the introduction of the ordinance the court overruled, or which one of the many exceptions, is relied upon. Parties have the right to have their objections and exceptions noted in the statement of facts, and thus dispense with the necessity of preparing bills and having the same signed by the judge and filed with the clerk; but, when they rely upon this right, it is incumbent upon them to present the grounds of their objection clearly, so that the appellate

courts will not be left to conjecture as to which one of a great number of objections and exceptions is presented to it for review, or to wade through a mass of statement of facts to ascertain what objection was made. Because the statement following the proposition is, for the reason stated, wholly insufficient, we decline to consider the assignment.

[8] It appears that some time prior to the explosion the city council of the city of Lufkin appointed a committee to revise and codify the ordinances of the city. This committee made their reports from time to time, accompanied by the ordinances which it had revised and codified, and the city council would in a proper manner adopt the revised ordinances thus presented, placing each ordinance under a separate title, beginning with title 1 and running past title 15. Each title consisted of one or more chapters. Title 15, containing fire regulations, also contained the ordinance prohibiting the storing of dynamite in the city in greater quantity than 25 pounds. The witness Humason, who at the time was city secretary, produced the minute book of the proceedings of the council, in which there was recorded the action of the city council in adopting chapter 15. This witness was permitted by the court, over the objection of the defendant, to testify that the city council in fact duly adopted title 15, but that in writing this proceeding in the minutes he erroneously, and by mistake, wrote it that the council had adopted chapter 15. The objection urged was that parol testimony of the witness, to the effect that the city council had adopted the ordinance as title 15, was not admissible to contradict the recital in the minutes that chapter 15 was adopted.

We think that whether the city council had adopted the ordinance was a question of fact, and, if the ordinance was in fact passed, that fact could be shown, even if it was necessary, in order to do so, to show that a mistake in the minutes had been made by reciting that the ordinance was adopted as chapter 15 instead of title 15.

[9] Under the seventh assignment of error, the appellant presents the following proposition:

"The plaintiff having alleged as a ground of negligence against the defendant that dynamite was exploded by reason of its employé George Frank Parsons striking or stepping on a match which caused the gas or gasoline to explode, causing the dynamite to explode, resulting in injury to the plaintiff, and the undisputed facts showed that if the dynamite was exploded by George Frank Parsons, either by striking a match or stepping on a match, or otherwise, that said George Frank Parsons was not at the time performing any services in behalf of the appellant, the defendant below, nor was he in the discharge of any of the duties in behalf of the appellant, defendant below, and that the explosion of the dynamite by George Frank Parsons while not in the discharge or performance of any duties that he owed to appellant would not make appellant liable, regardless of whether the dynamite was exploded intentionally or otherwise."

The substance of this proposition is that if Parsons caused the explosion of the dynamite, either intentionally or accidentally, while not in the discharge of any duty he owed appellant under his employment, the appellant would not be liable to plaintiff for the injuries resulting from the explosion. This proposition presents a question of law and does not call for a review of the facts. The court did not file its findings of facts, and we cannot say, therefore, whether its judgment was based upon the view that Parsons caused the explosion intentionally, or that he did so by accident. That Parsons caused the explosion does not seem to be controverted. The testimony in the record is sufficient to base a finding in favor of plaintiff upon either of these theories. We shall assume, in support of the judgment, however, that the court found that Parsons unintentionally caused the explosion. If he did, we think that, under the facts proved, the appellant was liable for the injuries to plaintiff caused by the explosion. We have seen that an ordinance of the city of Lufkin prohibited the storing of such a large quantity of dynamite in any house within the corporate limits. The act of appellant in storing and keeping the dynamite in its warehouse was in direct disobedience of the ordinance, and thus was negligence as a matter of law. Railway v. Brown, 11 Tex. Civ. App. 503, 33 S. W. 148, and authorities cited; Railway v. Calvert, 32 S. W. 248; Railway v. Pendery, 14 Tex. Civ. App. 60, 36 S. W. 794; Foley v. Northrup, 47 Tex. Civ. App. 277, 105 S. W. 230. If Parsons negligently caused the explosion, the negligence of the appellant in storing the dynamite in its warehouse concurring with the negligence of Parsons was unquestionably the proximate cause of plaintiff's injuries, and appellant is liable therefor. But we may go even further. It being shown that the keeping of the dynamite in the warehouse was negligence per se, we cannot see why the appellant would not be liable even if Parsons intentionally caused the explosion; for, whether the explosion was due to accident or was intentionally caused, the keeping of the dynamite at a place prohibited by ordinance was a concurring proximate cause of plaintiff's injuries, for which appellant is liable.

In Gonzales v. Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17, the plaintiff was injured by the falling of lumber which the city had unlawfully permitted to be piled and remain in a public street. The lumber was caused to fall by a drayman running his dray, loaded with lumber, against the lumber pile. It was contended that, even if it was negligence on the part of the city to allow the lumber to remain upon the street, such negligence was not the proximate cause of the injury, but that the proximate cause was the act of the dray load of lumber being driven against the pile. In deciding the case, the court uses this language:

"It is true, if the drayman had not run his load against the lumber, the accident would not have occurred, and, on the other hand, if the lumber had not been in the street, it would not have occurred. Dispense with either of these facts, and there would have been no injury. The liability cannot be tested in this manner, nor by comparing the negligence of the two, if both were guilty of negligence. If the presence of the lumber pile in the street was at the time chargeable to the negligence of the city, and such negligence, together with the act of the drayman, caused the injury, it would be in part the proximate cause."

In Koelsch v. Philadelphia Co., 152 Pa. 355, 25 Atl. 522, 18 L. R. A. 759, 34 Am. St. Rep. 653, the plaintiff was injured by an explosion of gas which had accumulated in his cellar, alleged to have escaped from one of defendant's service pipes in the street. In the concluding portion of the opinion, we find this language:

"It is further contended that, although the defendant may have negligently permitted the gas to escape from its main into the plaintiff's cellar, that negligence was not the proximate cause of the explosion, and that if George Walters, and not its servant sent to examine the premise, lighted the match it is not responsible. Under the facts of this case, it is immaterial whether Walters or Householder, the defendant's servant, struck the match. The concurrence of the presence of the gas and the lighting of the match, the negligence of the defendant with that of Walters, was necessary to and did cause the explosion. In such cases, the injured party has his redress against either of the wrongdoers, or both, at his election."

[10] Even if the ordinance had not existed, we think the court would have been justified in holding that the keeping by appellant, for such a length of time as shown by the evidence, of such a large quantity of dynamite in its warehouse, situated near the center of the town in such close proximity to business houses and dwellings, and as a part of its depot which was much frequented, constituted a public nuisance, the mere existence of which rendered appellant liable for damages resulting from an explosion, without regard to the degree of care exercised in keeping it. Railway v. Beauchamp, 95 Tex. 496, 68 S. W. 502, 58 L. R. A. 716, 93 Am. St. Rep. 864. In Schintzer v. Powder Mfg. Co. (Mo. App.) 160 S. W. 286, the reason given for the rule is this:

"If damage happen to a person from explosion, the injured party is entitled to compensation without proving negligence on the part of the defendant. He is injured by that which breaks the law made for his protection—the law against public nuisance. He is in no fault, while the other man is, and he has received damage from that other man's wrongful act. He has a right to immunity from this injury, and the other man owed him the duty of securing him immunity. The state is wronged by the maintenance of a nuisance which may at any moment take the lives and destroy the property of its people passing and repassing over its highways, and reposing and working in their accustomed places, and the particular person hurt has special cause of complaint, because he is especially injured."

In French v. Powder Mfg. Co., 173 Mo. App. 220, 158 S. W. 723, it is held, in effect,

that one who stores on his premises a large quantity of nitroglycerine thereby creates a nuisance per se so far as it affects those in the zone of danger from an explosion, regardless of the degree of care exercised by him, and, where an explosion occurs and injury results to another having no contractual relations with him, he is liable for the damages naturally resulting therefrom. The following authorities are to the same general effect as the cases above referred to. Glycerine Co. v. Manufacturing Co., 60 Ohio St. 560, 54 N. E. 528, 45 L. R. A. 658, 71 Am. St. Rep. 740; Rudder v. Koopman, 116 Ala. 332, 22 South. 601, 37 L. R. A. 489; 29 Cyc. 1161.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.

———

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes