## LAMAR & SMITH v. STROUD. (No. 3528.)

Court of Civil Appeals of Texas. Texarkana.
April 12, 1928.

Rehearing Denied April 19, 1928.

**1. Municipal corporations ⟨key⟩592(1)—No city has power to adopt ordinance which conflicts with law of state.**

No city has the power to adopt an ordinance which conflicts with the law of the state.

**2. Automobiles ⟨key⟩9—Statute to prevent driving at dangerous speed on public highways cannot be construed as providing all needed restrictions, nor as license to operate motor car within limitations prescribed by ordinance (Laws 1923, c. 155).**

Laws 1923, c. 155, enacted to prevent persons from driving at dangerous rates of speed on public highways, cannot be construed as providing all needed and reasonable restrictions which public safety demanded, nor as license from state to operate motor car within limitations prescribed by ordinance, regardless of special conditions which jeopardize safety of other people.

**3. Evidence ⟨key⟩14—It is common knowledge that in densely populated cities public safety demands regulations of traffic not found in state law.**

It is matter of common knowledge that within state there are some densely populated cities with numerous street crossings over which motor travel is heavy, necessitating regulations of traffic not found in state law.

**4. Automobiles ⟨key⟩9—Ordinance requiring motor cars to stop at street intersections in obedience to established signals did not conflict with statute limiting speed and exempting ambulances (Laws 1923, c. 155; Laws 1917, c. 207, § 23).**

City ordinance, requiring that motor cars stop at congested street intersections, in obedience to certain established signals before proceeding across line of traffic, held not in conflict with Laws 1923, c. 155, limiting speed at which vehicle may travel before or after passing such intersections, nor with provision exempting ambulances from limitation placed on speed by reason of Laws 1917, c. 481, § 23, providing for regulation of vehicles by local authorities.

**5. Trial ⟨key⟩255(4)—Objection to ordinance containing subdivisions as conflicting with statute held properly overruled, where part of ordinance was valid, and request was not made to limit application (Laws 1923, c. 155).**

Where objection was made to introduction of ordinance containing subdivisions because it conflicted with provisions of Laws 1923, c. 155, limiting speed, held objection was properly overruled, no request being made to limit application of ordinance, and part of ordinance not being in conflict with statute.

**6. Automobiles ⟨key⟩175(2)—Driver of ambulance violating valid city ordinance in proceeding to cross street without awaiting signal light, held guilty of negligence as matter of law.**

Where it appeared that driver of ambulance violated valid city ordinance which required him to stop and await appearance of signal light before proceeding, submission of issue of negligence as question of fact to be determined by jury under rules of common law was not prejudicial to defendant, since court might have assumed that driver of ambulance was guilty of negligence as matter of law in crossing street in violation of ordinance, and so instructed jury.

**7. Automobiles ⟨key⟩175(2)—Ambulances exempt from speed regulations in state statute are not exempt from local regulation of traffic (Laws 1923, c. 155).**

While ambulances were exempted from speed regulations under Laws 1923, c. 155, they are not exempt from local regulation prescribed by city for control of traffic at street intersections.

**8. Automobiles ⟨key⟩175(3)—That ambulances were given right of way over other vehicles did not license them to disregard signal regulations.**

Fact that ambulances were given right of way over other vehicles did not license them to disregard signal regulations when crossing another line of traffic, or to travel anywhere in city at rate of speed which might endanger life or property.

**9. Automobiles ⟨key⟩175(2)—Police officials cannot authorize ambulance to disregard traffic ordinance.**

In action by passenger of bus against bus owner and owner of ambulance with which it collided, resulting in injury, where ambulance violated ordinance, but offered to show that police officials had been accustomed to permit ambulances to disregard ordinance, held that police officials could not by convenience legalize what governing body of city had prohibited.

**10. Automobiles ⟨key⟩171(2)—That driver of bus negligently disregarded ordinance, and proceeded without awaiting signal light, held not to justify driver of ambulance in disregarding ordinance.**

In action against bus owner and ambulance owner, where both disregarded ordinance re-

quiring them to stop at signal light, fact that driver of bus disregarded light, or was driving at excessive speed, did not justify driver of ambulance in disregarding ordinance.

**11. Husband and wife ⬅➡270(1)—Married woman, separated from husband and supporting herself, could sue alone for injuries sustained from collision between ambulance and bus in which she was riding.**

In action by married woman against bus owner and ambulance owner for injuries arising out of collision, where she lived on a farm and supported herself, and was separated from husband, who would not have filed suit, *held* that she could sue alone.

**12. Husband and wife ⬅➡260—Damages recovered by woman living apart from husband, from whom she was permanently separated, held to belong to community estate.**

Damages recovered by married woman living apart from husband, from whom she was permanently separated, *held* to belong to community estate.

**13. Husband and wife ⬅➡265, 270(1) — Husband, abandoning duties, loses exclusive right to sue for and control community property which wife needs for her support.**

Husband cannot by his neglect or refusal to sue deprive wife of benefits of property in which she has equal interest with husband, and, when he abandons duties as husband, he loses exclusive right to sue for and control community property which wife needs for her support.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by Mrs. M. J. Stroud against Lamar & Smith and others. Case dismissed as to the Bulldog Auto Insurance Company. Judgment for plaintiff, and first named defendant appeals. Affirmed.

Lawther & Pope, of Dallas, for appellant.
Bailey & Bailey, of Dallas, for appellee.

HODGES, J. In March, 1925, the appellee, Mrs. Stroud, was injured while traveling as a passenger in a motorbus owned and operated by A. L. Coffman. The injury was the result of a collision at the intersection of St. Paul and Bryan streets in the city of Dallas, between the bus and an ambulance owned by appellants, Lamar & Smith. In January, 1927, Mrs. Stroud filed this suit against Lamar & Smith and Coffman to recover damages for the injuries she sustained. The Bulldog Auto Insurance Company was also made a party defendant, but was later dismissed from the case. In her petition Mrs. Stroud charged that both vehicles were negligently operated at a dangerous, excessive, and unreasonable rate of speed, and in excess of 15 miles per hour. She specially pleaded an ordinance of the city of Dallas regulating traffic on the streets and requiring the observance of signal lights at street crossings. She further alleged that the drivers of both vehicles failed to observe those signals.

Since Coffman did not appeal from the judgment rendered in the trial court, his pleadings will not be noticed.

Lamar & Smith answered by general and special exceptions and a general denial. They also pleaded specially that under the Penal Code of Texas, and under certain ordinances of the city of Dallas, emergency ambulances were expressly excepted from the provisions of law regulating the speed of motor vehicles, and that emergency ambulances had the right of way over other vehicles operated on the highways. They further pleaded that the injury was due solely to the negligence of the driver of the bus, and that Mrs. Stroud was guilty of contributory negligence in permitting the driver of the bus to operate that vehicle at an unlawful rate of speed.

A trial before a jury resulted in a judgment in favor of the plaintiff below against both defendants for the sum of $7,000 as damages for her injuries, and $500 for expenses incurred in their treatment.

The judgment against Lamar & Smith is based upon the following special findings of the jury: (1) The driver of the ambulance was negligent in the manner in which he operated the ambulance. (2) Such negligence was a proximate cause of the injuries to the plaintiff. (3) The ambulance was being driven at the rate of 25 miles per hour at the time of the collision. (4) The driver of the ambulance was negligent in driving at that rate of speed. (5) That negligence was a proximate cause of the injury. (Interrogatories numbered 6, 7. 8. 9. and 10 submitted similar questions with reference to the operation of the bus, and were answered favorably to the plaintiff.) (11) The driver of the ambulance sounded his horn, or siren, as he approached the intersection of Bryan and St. Paul streets. (14) The driver of the bus failed to sound his horn as he approached that intersection. (17) The driver of the ambulance kept a lookout in a careful and prudent manner as he approached the intersection of Bryan and St. Paul streets upon that occasion. (23) The driver of the ambulance failed to have his vehicle under control when approaching the intersection of those streets. (24) Such failure was a proximate cause of the accident. (25) On that occasion the ambulance had the right of way over the bus. (26) The collision was not an unavoidable accident. (27) The plaintiff, Mrs. Stroud, was not guilty of contributory negligence. (29) The color of the signal light showing towards the defendant Coffman at the intersection of the streets where the accident occurred was orange. (30) The speed of the bus in crossing the intersection line of traffic at that street crossing was 30 miles

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

per hour. (31) The speed of the ambulance at the time of crossing the intersecting line of traffic was 23 miles per hour. (32) The color of the official signal light showing on Bryan street (the street on which the ambulance was traveling) at the time of the accident was orange. (33) At the time the official signal light at the intersection of Bryan and St. Paul streets was changed the ambulance was 50 feet west from the intersection. (34) The speed at which the ambulance was traveling at the time it crossed the intersecting lines of traffic on Bryan and St. Paul streets at the time of the accident was not a reasonable, considerate, and safe speed under the conditions then existing. In answer to other special interrogatories, the jury found the damages awarded by the judgment.

The record contains numerous assignments of error. However, the principal defense urged in the trial court, and relied on in this appeal, is based upon the express exemption of ambulances from the limitations prescribed by statute regulating the speed of motor vehicles on the public highways both in and out of incorporated cities. That defense has been raised in different ways, by exceptions to the plaintiff's pleadings, special denials, objections to the introduction of testimony, and requests for special instructions. It is conceded that, at the time of the collision, the ambulance was answering an emergency call. The law regulating the speed of motor cars in force at the time the plaintiff was injured was the Act of 1923 (Laws 1923, c. 155, § 1), and is as follows:

"Every person operating or driving a motor or other vehicle upon the public highways of this state, shall operate or drive same in a careful and prudent manner, and at a rate of speed not greater than is reasonable and proper having due regard for the traffic and use of the highway; and no person shall operate, drive or pass any motor or other vehicle, person or thing on any public highway of this state at such rate of speed as to endanger the life or limb of any person, or the safety of any property; provided that it shall be unlawful for any person to operate or drive any motor or other vehicle upon the public highways of Texas at a rate of speed in excess of thirty-five miles per hour; and provided further, that in any event, no person shall operate or drive a motor or other vehicle within the corporate limits of an incorporated city or town, or within or through any town or village not incorporated within this state, at a greater rate of speed than twenty miles per hour; provided further, that the regulation with regard to speed as set forth in this section shall not be held to apply to fire patrols or motor vehicles operated by the fire department of any city, town or village within this state responding to calls, nor to police patrols, ambulances or physicians responding to emergency calls."

Appellee introduced in evidence the following provisions of an ordinance of the city of Dallas:

"Section 1—Definitions.

"Signal System: That by the 'signal system' as used herein means a system of controlling traffic, both vehicular and pedestrian, by the use of lights as follows: Red lights, green lights and yellow lights. The display of red signal lights means for pedestrians' and vehicular traffic to stop. The display of yellow signal lights means to announce that pedestrian and vehicular traffic to be at attention for movement until the green light is displayed, which means for pedestrian and vehicular traffic to promptly move forward."

"Section 3—Drivers of Vehicles.

"The following regulations for vehicles (including street cars in so far as their being on rails will permit) shall be observed by the drivers thereof, who shall promptly comply with all orders by voice, hand or whistle or signal light from the police as to starting, stopping, slowing, approaching or departing from any place, the manner of taking up or setting down passengers and the loading or unloading of anything.

"Vehicular or pedestrian traffic may be diverted by the police to avoid congestion or to promote safety and convenience.

"Reckless driving shall be unlawful and shall include the following:

\*      \*      .\*    ·  \*      \*      \*

"(c) Failing to exercise due care in crossing or entering the traffic of another roadway, bearing in mind that it is obligatory not to interrupt the traffic of the more important thoroughfare unnecessarily.

"(d) Driving any vehicle across or into a safety zone.

"(e) Exceeding a reasonable, considerate and safe speed rate under existing conditions, or the speed rate established by law, which is fifteen (15) miles per hour within the limits defined as the business section and in accordance with the state law in other parts of the city.

"(f) Violating any of the following regulations so far as to cause danger of failing to take every reasonable precaution for safety or to obey any order of a traffic officer or any direction indicated by official traffic sign or limit line."

"Section 13. Business District. Speed.

"The district hereinafter described is designated as the business district and the speed limit therein shall not exceed a greater rate of speed than fifteen (15) miles per hour. The maximum speed in parts of the city outside of the hereinafter described business district shall be as provided by the state law per hour. The said business district is described as follows, to wit: Beginning at the intersection of Houston and Young street; thence east along the south side of Young street to Harwood street; thence south along the west side of Harwood street to Canton street; thence east along the south side of Canton street to its intersection with the east line of Preston street; thence north along the east line of Preston street to Commerce street; thence east along the south line of Commerce street to Hawkins street; thence north along the east line of Hawkins street to the north line of Pacific avenue; thence west along the north line of Pa-

cific avenue to Harwood street; thence north along the east line of Harwood street to Ross avenue; thence west along the north line of Ross avenue to Houston street; thence south along the west line of Houston street to the southwest line of Young street."

"Section 24—Reasonable and Safe Speed.

"That notwithstanding the rules herein provided with reference to speed, no person in charge of an automobile or other vehicle on any street of the city of Dallas shall drive the same at any greater rate of speed than is reasonable and safe, taking into consideration the amount and condition of traffic on such street, and the number, age and the condition of the pedestrians thereon, and under no circumstances so as to endanger the life or limb of any person thereon."

"Section 31—Right of Way of Certain Vehicles.

    *     *     *     *     *     *

"The driver of a vehicle on the approach of apparatus of the fire department and emergency ambulances shall immediately draw up said vehicle as near as practicable to the right hand curb and parallel thereto and bring his vehicle to a stop. * * *

"Section 39—Penalty.

"Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not exceeding two hundred ($200.-00) dollars.

"Section 42: Emergency.

"Whereas, on account of the great congestion and confusion on our public streets, occasioned by the lack of certain rules and regulations governing the public traffic thereon, creates a necessity and an urgency and an emergency for the immediate preservation of the public peace, health and safety, that requires that this ordinance take effect at once and it is accordingly so ordained that this ordinance be and the same shall take effect from and after its passage and approval by the mayor as in the charter in such cases made and provided."

Appellant objected to the introduction of section 1 of the above ordinance, which defines the term "signal system" and the significance of the different colored lights, upon the ground that those provisions were in conflict with the penal laws of the state and other ordinances of the city, and were therefore invalid. The contention seems to be that the general laws of the state covers the entire field of motor traffic regulation on all public highways, and that municipalities now have no power to go so far as to adopt a signal light system as a means of controlling traffic and preventing accidents at street crossings.

[1-4] It is true that no city has the power to adopt an ordinance which conflicts with a law of the state; but the question here is, Does that portion of the ordinance objected to conflict with the general law? The Penal Code was enacted to prevent persons from driving at dangerous rates of speed on the public highways, but that statute cannot be construed as providing all the needed and reasonable restrictions which the public safety may demand, nor can it be invoked as a license from the state to operate a motor car within the prescribed limitations, regardless of special conditions which jeopardize the safety of other people. The statute designates what shall be punished, without reference to the consequences of doing the forbidden act. What may be offensive under the terms of the statute may be culpable negligence under the provisions of the common law. It is a matter of common knowledge that within this state are some densely populated cities, with numerous street crossings over which motor travel is heavy. Common observation shows that under conditions frequently existing in those cities the public safety demands some additional regulations of the traffic not found in the state law. The local city's requirement that motor cars stop at congested street intersections in obedience to certain established signals before proceeding across the line of traffic is a salutary regulation, and is not in conflict with the statutory provision limiting the speed at which vehicles may travel before or after passing those intersections. Neither is such a 'provision in conflict with an exemption from the limitations placed on speed by the penal statute. G., C. & S. F. Ry., Co. v. Calvert, 11 Tex. Civ. App. 297, 32 S. W. 246; 43 Corpus Juris, pp. 218, 219. However, if upon principle that proposition may be regarded as doubtful, we think the doubt is removed by the following provisions of the Acts of 1917 (c. 207), in force at the time of the injury:

"Sec. 22. Motor vehicles in passing each other on the highways shall slow down their speed to fifteen miles per hour.

"Sec. 23. Limitations as to the rate of speed herein fixed by this act shall be exclusive of all other limitations fixed by any law of this state or of any political subdivision thereof and local authorities, cities and towns shall have no power to pass, enforce or maintain any ordinances, rules or regulations in any way in conflict with or inconsistent with the provisions of this act, and no such ordinance, rules or regulations of such local authorities now in force, or hereafter enacted shall have any force excepting, however, that

"(1) Such powers as are now or may hereafter be vested in local authorities to enact ordinances or regulations applicable equally or generally to all vehicles and other users of highways, and providing for traffic or crossing officers or semaphores to bring about the orderly passage of vehicles and other users of the public highways or certain portions thereof where the traffic is heavy and continuous, and

"(2) The powers now or hereafter vested in local authorities to license and regulate the operation of vehicles offered to the public for hire; and to regulate the use of the highways for processions and assemblages, shall remain in full force and effect and all ordinances, rules and regulations which have been or which may

be hereafter enacted in pursuance of such powers, shall remain in full force and effect."

[5-8] Appellant also objected to the introduction of section 3 of the city ordinance, containing subdivisions (c), (e), and (f), "because said ordinances are in conflict with the provisions of the Penal Code and other provisions of the city ordinances of the city of Dallas which specifically exempt emergency ambulances from the operation of the speed laws, and specifically give said ambulances the right of way over other vehicular traffic. It is true that so much of the ordinance above referred to as undertook to fix a speed limit of 15 miles per hour anywhere within the city limits is in conflict with the state law which prescribes a limit of 20 miles per hour for traffic in incorporated towns and cities. Ex parte Curry, 96 Tex. Cr. R. 3, 255 S. W. 730. The ruling of the court in the case just referred to is based upon the language used in the first part of section 23 of the Act of 1917 quoted above. Upon proper objections, the court should have excluded that portion of the ordinance which fixes a speed limit of less than the rate prescribed by the statute. The objection, however, included other provisions of the ordinance which do not conflict with the statute and which were applicable to the defendant Coffman, the owner of the bus, who was joined as a party in the suit. No request was made to limit the application of the ordinance, and therefore the objection was properly overruled. Moreover, we think that the admission of the ordinance and some statements of the witness Dellinger which were objected to, even if erroneous, was harmless, in view of the undisputed facts and the findings of the jury. It conclusively appears that in crossing the street at the time of the collision the driver of the ambulance violated a valid city ordinance which required him to stop and await the appearance of the green light. The jury found that he was 50 feet from the crossing when the signal light changed from red to orange. The evidence shows that he failed to stop his car, but proceeded at a rapid rate of speed without waiting for the appearance of the green light. While ambulances are exempted from the speed limitations, they are not exempt from the local regulations prescribed by the city for the control of traffic at street intersections. The fact that ambulances are given the right of way over other vehicles did not license them to disregard the signal regulations when crossing another line of traffic, or to travel anywhere in the city at a rate of speed which might endanger life or property. While the trial court submitted the issue of negligence as a question of fact to be determined by the jury under the rules of the common law, he might have assumed that the driver of the ambulance was guilty of negligence as a matter of law in crossing the street at the time he did. Courts may treat the violation of a state law or a valid city ordinance as negligence per se and so instruct the jury. T. & P. Ry. Co. v. Brown, 11 Tex. Civ. App. 503, 33 S. W. 146; H., E. & W. T. Ry. Co. v. Cavanaugh (Tex. Civ. App.) 173 S. W. 619; G., H. & S. A. Ry. Co. v. Cook (Tex. Civ. App.) 214 S. W. 539.

[9, 10] The disregard of the traffic signals on that occasion is justified by the appellants on the ground that a custom existed which allowed ambulances, when answering emergency calls, to pass over street intersections while the orange light was showing. There was evidence tending to show that the police officials had been accustomed to permit ambulances to disregard the orange light under such conditions. But, even if that were true, the wrongful indulgence of the police department did not cure the infraction of the ordinance, or relieve the driver of the ambulance from the legal effect of having violated the positive provisions of an existing traffic regulation. The police officials could not by connivance legalize what the governing body of the city had prohibited. In that view of the evidence, the rate of speed at which the ambulance was traveling when the collision occurred is of little or no importance. The facts make it plain that, if the driver of the ambulance had stopped his car in obedience to the city ordinance, there would have been no collision with the bus, and no injury to the plaintiff. The fact that the driver of the bus also negligently disregarded the signal light, or was driving at an excessive rate of speed, cannot justify the driver of the ambulance in disregarding the requirements of the ordinance.

[11] In a written argument filed by counsel for appellants since this case was submitted, attention is called to the fact that the plaintiff is a married woman, and has filed this suit without the joinder of her husband. In her petition the plaintiff alleged as follows:

"Plaintiff represents unto the court that she is a married woman, and that her husband's name is W. M. Stroud, but that her husband has failed and neglected and continues to fail and neglect to file, maintain, or prosecute this suit, or any suit involving the cause of action herein asserted, for the relief herein prayed, or for any relief, and that the damages recoverable on the cause of action as set out herein are and at all times have been plaintiff's separate property and estate; and she prays authority to file, maintain, and prosecute this suit, and to have recovery therein, without the joinder of her husband."

The plaintiff testified, in substance, that she and her husband had not been divorced at that time, and that she had never asked him to bring the suit. He was living at Maybank, Tex. They had been separated five years. She further stated, "I know he would not have a thing to do with this suit." It also appears from the plaintiff's testimony that, when injured she was living in the

country, on a farm owned by herself and husband. The value of the farm was not stated.• She was required to do manual labor on the farm in order to support herself and children. Some time before the trial she sold the farm in order to provide means of support. Whether or not her husband joined her in that sale does not appear. According to her testimony, the injuries for which she sues had materially affected her capacity to labor. It does not appear that she had any other means of support sufficient to meet her needs.

The record shows that the injury occurred in March, 1925. This suit was not filed until some time in January, 1927, nearly two years later. At the time of the trial, more than two years had passed since the damages accrued, and the husband's right to file a suit was barred.

No assignment has been presented in this court complaining of the insufficiency of the pleadings or of the evidence to authorize the appellee to sue alone. In the written argument, the objection is presented as a fundamental error. In the absence of an exception, we think, the pleadings are sufficient to support a judgment rendered in a suit by the wife alone. The evidence tended strongly to show that the pair had permanently separated, and that the husband would not have filed this suit. While the statute provides that suits of this character shall be brought by the husband, the courts have held that under certain conditions the wife may sue alone. Ezell v. Dodson, 60 Tex. 331; Cullers v. James, 66 Tex. 494, 1 S. W. 314. We think the facts bring this case within the exception stated in the cases above cited.

[12, 13] While the plaintiff alleged that the damages sued for belonged to her separate estate, the courts have held to the contrary, and it now seems to be settled that, notwithstanding the language of the statute, the damages recovered in this case would belong to the community estate. Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799; Northern Texas Traction Co. v. Hill (Tex. Civ. App.) 297 S. W. 778. Under other provisions of the statute, the right to sue for the recovery of community property is vested in the husband. But, under certain conditions, such as we think have arisen in this case, the wife alone may bring a suit for such property. M., K. & T. Ry. Co. v. Allen, 53 Tex. Civ. App. 433, 115 S. W. 1179. The husband cannot by his neglect or refusal to sue deprive the wife of the benefits of property in which she has an equal interest with the husband. When he abandons his duties as a husband, he loses his exclusive right to sue for and control community property which the wife needs for her support. Wright v. Hays, 10 Tex. 131, 60 Am. Dec. 200; Dority v. Dority, 96 Tex. 215, 71 S. W. 950, 60 L. R. A. 941; Fullerton v. Doyle, 18 Tex. 3.

The jury found that the appellee was not guilty of contributory negligence, and the evidence abundantly supports that finding. There is no evidence that the injuries from which she suffered had been aggravated by improper treatment by her physician. According to the testimony of the appellee and that of her witnesses as to the nature and extent of her injuries, the judgment cannot be regarded as excessive.

The judgment is affirmed.